Jacqueline M. HALL (96–6253); James Kenneth Cooper (96–6256); William Derrick (96–6257); Scott Griffin (96–6258); Eddie Hedgecoth (96–6259); Cynthia Y. McDaniel (96–6260), Plaintiffs–Appellants,

v.

Leon TOLLETT, Sheriff of Cumberland County, Tennessee and Leon Tollett, Individually, Defendant–Appellee.

Nos. 96–6253, 96–6256 through 96–6259 and 96–6260.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 8, 1997.

Decided Oct. 22, 1997.

Linda J. Hamilton Mowles (argued and briefed), Lewis, King, Krieg, Waldrop & Catron, Knoxville, TN, for Plaintiffs–Appellants.

Dean B. Farmer (argued and briefed), William T. Chastain (briefed), Hodges, Doughty & Carson, Knoxville, TN, S. Roger York, Crossville, TN, for Defendants–Appellees.

Before: KENNEDY, GUY, and SILER, Circuit Judges.

KENNEDY, Circuit Judge.

Plaintiffs Jacqueline Hall, James Cooper, William Derrick, Scott Griffin, Eddie Hedgecoth, and Cynthia McDaniel appeal the District Court's order granting summary judg-

ment in favor of defendant Leon Tollett, the Sheriff of Cumberland County, Tennessee. Each plaintiff sued defendant, both as an individual and in his official capacity, under 42 U.S.C. § 1983. Plaintiffs alleged that shortly after he was elected sheriff, defendant violated their First and Fourteenth Amendment rights by dismissing them from their jobs as employees of the Cumberland County Sheriff's Department in retaliation for their political support of defendant's campaign opponents. The District Court consolidated the individual cases for purposes of defendant's motions for summary judgment and granted summary judgment for defendant in each case. Plaintiffs filed this timely appeal. For the following reasons we AFFIRM, in part, REVERSE, in part, and REMAND plaintiff Derrick's case to the District Court for consideration of his claims against defendant in his official capacity.

## I.

Plaintiffs were employees of the sheriff's department of Cumberland County, Tennessee. During the 1994 campaign for sheriff, defendant ran on a platform promising to reorganize the sheriff's department. He defeated the incumbent, Dale Elmore, in the Democratic primary and defeated the Republican candidate, Avery York, in the general election. On August 31, 1994, defendant told nine of the sheriff's department's sixty-four employees that they would not be needed in his organization. The terminations became effective on September 1, 1994, when defendant took office. Plaintiffs were six of those nine, and each asserts that he or she was fired in retaliation for supporting defendant's campaign opponents.

Defendant Tollett testified at deposition that he assumed that all of incumbent Sheriff Elmore's employees would support Elmore in the primary but that he had no knowledge of which candidate each plaintiff supported in the general election. He also stated at deposition that he thought sheriff's employees could be fired at will, but that he knew they could not be fired simply on the basis of their

political affiliation.[1] He offered alternative reasons for the firing of each of the plaintiffs and denied that he fired any for supporting his political rivals.

The District Court granted defendant's motions for summary judgment in each case. It found that plaintiffs Hall and Hedgecoth, employed respectively as food service supervisor and chief deputy, were employed in positions where termination based on political affiliation is constitutionally permissible. It found that two other plaintiffs, Griffin and McDaniel, had failed to put forth sufficient evidence to create a genuine issue regarding whether defendant knew of their political affiliation in the general election, thereby entitling defendant to summary judgment. With respect to the final two plaintiffs, deputies Cooper and Derrick, the District Court found that defendant was entitled to summary judgment because, even if these plaintiffs had proffered sufficient evidence to raise a question regarding defendant's knowledge of their political views during the general election, defendant was entitled to qualified immunity because the law at the time of firing did not clearly establish that employees in their position were constitutionally protected from politically motivated firing. The District Court, however, did not provide separate reasons for granting summary judgment against plaintiffs Derrick and Cooper on their claims against defendant in his official capacity. Plaintiffs timely appealed the court's order, and we have jurisdiction under 28 U.S.C. § 1291.

## II.

### A. Standards of Review

▆▆▆ We review an order granting summary judgment de novo. *See, e.g., Terry Barr Sales Agency, Inc. v. All–Lock Co.,* 96 F.3d 174, 178 (6th Cir.1996). A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no issue as to any material fact and that the moving party

---

1. Neither party disputes that under Tennessee Law a sheriff's deputy is an employee at will.

*See* TENN.CODE ANN. § 8–20–109 (1993).

is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). Under this test, the moving part may discharge its burden by "pointing out to the district court ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The nonmoving party cannot rest on its pleadings, but must identify specific facts supported by affidavits, or by depositions, answers to interrogatories, and admissions on file that show there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553. Although we must draw all inferences in favor of the nonmoving party, *Terry Barr Sales Agency, Inc.,* 96 F.3d at 178 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986)), it must present significant and probative evidence in support of its complaint. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512.

■■■ Defendant argues that the order granting summary judgment in his favor was appropriate, in part, because he is entitled to qualified immunity. "[W]e first must decide whether the plaintiff has stated a section 1983 claim against the ... defendant[ ] before addressing the qualified immunity question.... If [plaintiff] has stated a claim, then we must examine whether summary judgment is warranted on the grounds of qualified immunity." *Black v. Parke,* 4 F.3d 442, 445–46 (6th Cir.1993); *accord McLaurin v. Morton,* 48 F.3d 944 (6th Cir.1995). If a plaintiff has stated a claim under § 1983, we then review the District Court's decision regarding qualified immunity de novo. *Caldwell v. Moore,* 968 F.2d 595, 599 (6th Cir. 1992). Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Har-*

*low v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Whether the government official "is protected by qualified immunity turns on 'the objective legal reasonableness' of the action, assessed in the light of the legal rules that were 'clearly established' at the time the action was taken." *Caldwell,* 968 F.2d at 599 (quoting *Harlow,* 457 U.S. at 818–19, 102 S.Ct. at 2738–39).

## B. First Amendment Protection

In considering plaintiffs' claims, we look to the line of Supreme Court cases that governs when the patronage dismissal of public employees violates the First and Fourteenth Amendments. The Supreme Court first considered these issues in *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). In *Elrod,* non-civil service employees of the Cook County, Illinois Sheriff's Department, including the chief deputy of the process division of the sheriff's department, a process server, a bailiff, and a security guard, alleged that they had been discharged or threatened with discharge because they were not affiliated with the Democratic Party. After the Northern District of Illinois dismissed their complaint for failure to state a claim upon which relief could be granted, and the Seventh Circuit affirmed the dismissal, the Supreme Court granted certiorari. *Id.* at 350, 96 S.Ct. at 2678. Justice Brennan's plurality opinion announced the general rule "that the practice of patronage dismissals is unconstitutional under the First and Fourteenth Amendments." *Id.* at 373, 96 S.Ct. at 2689.

The Court, however, through Justice Brennan's plurality and Justice Stewart's concurring opinions, also created an exception to this general rule. Under this exception, public employees in certain positions can be terminated on the basis of political affiliation without violating the First Amendment. Justice Brennan wrote that "[l]imiting patronage dismissals to policymaking positions is sufficient to achieve" the valid governmental objective of preventing holdover employees from undermining the ability of a new administration to implement its policies. *Id.* at 367, 96 S.Ct. at 2686–87. He reasoned

that "[n]onpolicymaking individuals usually have only limited responsibility and are therefore not in a position to thwart the goals of the in-party." *Id.* Justice Stewart's concurrence phrased the exception slightly differently:

> The single substantive question involved in this case is whether a nonpolicymaking, nonconfidential government employee can be discharged or threatened with discharge from a job that he is satisfactorily performing upon the sole ground of his political beliefs. I agree with the plurality that he cannot.

*Id.* at 375, 96 S.Ct. at 2690 (Stewart, J., concurring).

The Court reexamined the scope of First Amendment protection against politically motivated discharge in *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). The Court, now speaking through a majority, reaffirmed that a discharge based on political affiliation presumptively violates the First Amendment, but that "party affiliation may be an acceptable requirement for some types of government employment." *Id.* at 517, 100 S.Ct. at 1294. The plaintiff bears the initial burden of proving that he or she was discharged because of his or her political affiliation.[2] *See id.* The defendant then bears the burden of showing that the plaintiff's job falls within the exception for policymaking positions. *See id.* at 518, 100 S.Ct. at 1294–95. The *Branti* Court rephrased this exception, stating that "the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Id.* Under this reformulated exception, in order to determine whether a politically motivated dismissal violates the First Amend-

ment, courts must look beyond the mere job title and examine the actual duties of the specific position.[3]

We have further explained how courts should identify the positions for which party affiliation is properly considered an appropriate requirement. In *Faughender v. City of North Olmsted,* 927 F.2d 909 (6th Cir.1991), we stated that "[t]o determine whether political considerations are appropriate in making personnel decisions for a certain position, we must examine the inherent duties of that position *and* the duties that the new holder of that position will perform." 927 F.2d at 913; *see also Williams v. City of River Rouge,* 909 F.2d 151, 155 (6th Cir.1990) ("[I]t is necessary to consider the position ... itself, rather than the position as performed by [the plaintiff]."). In *Faughender,* we held that the exception applied to the position of secretary to the mayor because its duties, as envisioned by the new mayor, would be inherently political. 927 F.2d at 913–14. Requiring both a prospective and a retrospective inquiry allows newly elected officials the flexibility to change the required duties of a position.

We reexplored the scope of the *Branti* exception in *Rice v. Ohio Dept. Transp.,* 14 F.3d 1133 (6th Cir.1994), where we held that political affiliation was an appropriate requirement for the position of administrative assistant to Ohio's Director of Transportation. In doing so, we reasoned that state legislatures have the ability to remove government positions from the political sphere by including them in a civil service system and that "the legislature's decision as to whether a particular job should be classified as political or nonpolitical is at least entitled ... to 'some deference.'" *Id.* at 1143 (quoting *Jimenez Fuentes v. Torres Gaztambide,* 807 F.2d 236, 246 (1st Cir.1986) (en banc)).

2. The Court recognized explicitly that claims alleging failure to rehire because of political affiliation are no different than claims alleging discharge based on political affiliation. *Branti,* 445 U.S. at 512 n. 6, 100 S.Ct. at 1291–92 n. 6.

3. In *Rutan v. Republican Party,* 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990), the Court held that the First Amendment extends to protect against the politically-motivated failure to pro-

mote. In *O'Hare Truck Serv., Inc. v. City of Northlake,* — U.S. —, 116 S.Ct. 2353, 135 L.Ed.2d 874 (1996), it held that the First Amendment extends to protect against the politically-motivated discharge of independent contractors. In neither case did the Court reconsider the scope of the exception it created in *Elrod* and refined in *Branti. See* 497 U.S. at 71 n. 5, 110 S.Ct. at 2735 n. 5.

In *McCloud v. Testa*, 97 F.3d 1536, 1557 (6th Cir.1996), we offered a more systematic explanation of how district courts in future patronage cases should determine whether political affiliation is an appropriate element of personnel decisions. We established four categories which attempt to capture the positions that could possibly fall into the *Branti* exception:

> Category One: positions specifically named in relevant federal, state, county, or municipal law to which discretionary authority with respect to the enforcement of that law or the carrying out of some other policy of political concern is granted;
>
> Category Two: positions to which a significant portion of the total discretionary authority available to category one position-holders has been delegated; or positions not named in law, possessing by virtue of the jurisdiction's pattern or practice the same quantum or type of discretionary authority commonly held by category one positions in other jurisdictions;
>
> Category Three: confidential advisors who spend a significant portion of their time on the job advising category one or category two position-holders on how to exercise their statutory or delegated policymaking authority, or other confidential employees who control the lines of communications to category one positions, category two positions, or confidential advisors; [and]
>
> Category Four: positions that are a part of a group of positions filled by balancing out political party representation, or that are filled by balancing out selections made by different governmental agents or bodies.

97 F.3d at 1557 (footnotes omitted). Under this framework, if a court determines that a position falls within the scope of any of these categories, then political affiliation is an appropriate requirement of that position, and patronage dismissals do not violate the First Amendment. With this in mind, we turn to the individual plaintiffs' cases.

### III.

Defendant testified at deposition that he assumed all sixty-four of the sheriff's department employees under his predecessor supported the incumbent candidate in the 1994 primary. He retained fifty-five of these employees. Thus, plaintiffs cannot establish that supporting the incumbent in the primary was the reason for their discharge. The relevant subject of our analysis then is whether defendant violated any of plaintiffs' constitutional rights by firing any of them because of his or her support for defendant's opponent in the general election.

### A. Jacqueline M. Hall

Prior to her termination in 1994, plaintiff Hall had worked as food service supervisor in the Cumberland County Sheriff's Department since she was hired by Sheriff Elmore in 1992. Her duties included: managing the kitchen, cafeteria, and laundry facilities; planning and budgeting for the menu; purchasing supplies and keeping records of expenditures; and overseeing the preparation of meals for the prisoners and employees fed by the Cumberland County justice system. When defendant was sworn in as sheriff, the food service department had a budget of $50,000. In the first two months of the fiscal year prior to defendant taking office, Hall had spent $12,600 of the budgeted amount.

Plaintiff Hall argues that defendant did not rehire her because she supported defendant's campaign opponents. She testified at deposition that her husband, who was also employed in the sheriff's department, told defendant that he and his wife would be supporting Sheriff Elmore in the primary. Hall stated that when she talked to people about defendant's opponent in the general election, she told them that she had known him since grammar school, that she thought he was a "fine upstanding man," that he had been a good law enforcement officer, and that she thought he would make a good sheriff. Although she encouraged these people to vote for York, she never told anyone that she was going to vote for York in the general election. She also testified at deposition that she never attended any political rallies or gave any money to the general election campaigns of either candidate. In her brief, plaintiff Hall states that "[h]er husband also told Tollett that he would be voting for Tollett but that plaintiff Hall

would be voting for York in the general election." Although plaintiff Hall testified at deposition that her husband conveyed his support to defendant, nothing in the record supports a conclusion that plaintiff Hall's husband ever told defendant that plaintiff Hall supported or would vote for York in the general election.

The District Court granted summary judgment to defendant, finding that even if defendant had fired Hall for her political affiliation, there was no constitutional violation because political loyalty was an appropriate requirement of the food supervisor position. We affirm the District Court's grant of summary judgment on different grounds. We find that plaintiff Hall has failed to set forth evidence that is sufficient to support a conclusion defendant knew or had reason to know of her support for Avery York in the general election. Without such evidence, she has failed to raise a genuine issue as to whether she was fired in retaliation for her support for defendant's political opponents. We do not reach the question of whether the duties of Hall's position entailed the type of duties and responsibilities that would except her from protection against termination based upon political affiliation.

### B. Eddie Hedgecoth

Prior to his discharge in 1994, plaintiff Hedgecoth had served as a deputy in the Cumberland County Sheriff's Department for eighteen years. During that period he served as Sheriff Elmore's chief deputy on two separate occasions. As chief deputy, he assumed the sheriff's duties in the sheriff's absence, supervised the deputies, scheduled their shifts, and recommended employees for dismissal to the sheriff. After defendant was elected sheriff, plaintiff Hedgecoth submitted an application for employment as a deputy sheriff in the new administration, but was not rehired. Plaintiff argues that defendant fired him because he supported defendant's political opponents. Defendant testified at deposition that he terminated Hedgecoth because he needed to have "full trust" in his chief deputy, and felt he could not trust Hedgecoth because "he had been associated with the several administrations down through the years."

In response to defendant's motion for summary judgment, plaintiff Hedgecoth relies on the following evidence as factual support for his allegations. He testified at deposition that he supported York during the general campaign and told this to his family members and plaintiff Hall. At deposition, he claimed that he handed out cards in support of York for a couple of hours at a polling station, but he also admitted that while he was there, he never saw defendant. He stated that his political activities also included attending one of defendant's campaign barbecues, where he spoke with defendant and defendant's wife for approximately twenty minutes. He never displayed any signs, stickers, or other manifestations of support for York, nor attended any of York's campaign rallies.

The District Court granted defendant's motion for summary judgment against plaintiff Hedgecoth, because it found both that plaintiff had put forth "scant evidence" that his political support and affiliation motivated his discharge, and that the position of chief deputy fell within the *Branti/Elrod* exception to First Amendment protection against politically-motivated termination. We affirm the District Court's order granting summary judgment. The evidence that plaintiff Hedgecoth put forth shows only minimal political activity and does not support an inference that defendant knew of his political affiliation in the general election. It consists entirely of his own testimony that he spent two hours passing out cards at a polling station and that he told his family members and plaintiff Hall that he supported York. Under these circumstances, he has failed to raise a genuine question of whether he was discharged because of his political affiliation.

It is also clear to us that political affiliation is "an appropriate requirement for the effective performance of" the chief deputy position. *Branti* 445 U.S. at 518, 100 S.Ct. at 1294. Plaintiff Hedgecoth testified at deposition that, as the chief deputy, he performed the sheriff's duties whenever the sheriff is off-duty or unavailable, supervised deputies, and recommended employees for

dismissal to the sheriff. We find that defendant was entitled to select a person whom he knew to share his political beliefs to occupy a position with such high levels of discretion and policymaking authority. We conclude, therefore, that the position of chief deputy falls within the *Branti/Elrod* exception to First Amendment protection against patronage-based dismissals.[4]

### C. Scott Griffin

█ Before defendant fired him in 1994, plaintiff Griffin was a nine-year veteran of the Cumberland County Sheriff's Department, where he worked as a deputy sheriff and shift supervisor. In response to defendant's motion for summary judgment, the only evidence that plaintiff Griffin has identified to support his allegation that defendant discharged him based on his political affiliation consists of his own deposition testimony that he talked to family and friends about his support for Avery York. Plaintiff Griffin put forth no other evidence of any manifestations of his political affiliation or political endorsement. He conceded at deposition that the only campaign rally he attended was in support of defendant. We agree with the District Court that plaintiff Griffin has failed to bear the burden of raising a genuine question of whether defendant had knowledge of plaintiff Griffin's endorsement of defendant's opponent. Therefore, we affirm the District Court's grant of summary judgment in favor of defendant.

### D. Cynthia Y. McDaniel

█ From May of 1992 until her discharge in 1994, plaintiff McDaniel worked as a jailer in the Cumberland County Sheriff's Department. Although she asserts that her political affiliation formed the basis for her dismissal, she points out minimal evidence in support of her claim. She stated at deposition that she placed a bumper sticker on the dashboard of her car and that she told other jailers that she supported York. She also stated that she placed a York sticker on the door of her house, but lamented that it was replaced with stickers supporting defendant as soon as she turned her back. Plaintiff McDaniel has offered no evidence showing that defendant knew she supported York in the general election. In fact, when asked about this at deposition she admitted that, "I don't know if he does or I don't know if he don't. I couldn't say." We agree with the District Court that summary judgment in favor of defendant is appropriate in this case because plaintiff McDaniel has failed to muster enough evidence to allow a reasonable jury to decide in her favor.

### E. James Kenneth Cooper

█ Plaintiff Cooper began working for the Cumberland County Sheriff's Department as a deputy in July of 1987. In response to defendant's motion for summary judgment, plaintiff Cooper argues that the following items in the record raise a genuine issue regarding whether he was fired in retaliation for his support of defendant's political opponents. Cooper testified at deposition that he showed his support for York by putting up campaign signs all over the county and putting bumper stickers on his truck. Plaintiff Cooper conceded at deposition that he never told defendant that he supported York, and relies only on his claim that his support for York was "common knowledge" as evidence that defendant knew of his political inclinations.

The District Court granted summary judgment in favor of defendant against Cooper because it found that even if Cooper had referred to enough evidence to survive a motion for summary judgment, defendant was nonetheless protected by qualified immunity. We find it unnecessary to reach the issue of qualified immunity in this case. Although we draw all reasonable inferences in favor of the nonmoving party, plaintiff still has not met his burden of presenting signifi-

---

4. Under the *McCloud* framework, which we established after the District Court considered this case, the position of chief deputy would qualify as a "category two" position, to which a legislatively-created policymaker has delegated a significant portion of his or her discretionary responsi-

bility. *See McCloud*, 97 F.3d at 1557. At times, the chief deputy probably also acts as a confidential advisor to the sheriff. In this role, the chief deputy position falls within "category three." *See id.*

cant and probative evidence that could support a conclusion that he was fired in retaliation for his political affiliation. He has put forth no evidence that defendant actually knew of his support of defendant's political rival or that this affiliation motivated his dismissal. On these grounds, we affirm the District Court's grant of summary judgment in favor of defendant.

### F. William Derrick

■ Plaintiff Derrick was also a deputy in the Cumberland County Sheriff's Department before his termination on September 1, 1994. In response to defendant's motion for summary judgment, Derrick points out the following evidence in support of his claim that his discharge violated his First Amendment rights. He presents his own deposition testimony that he campaigned for York in the general election, attended a "political function" in support of York, distributed campaign signs and bumper stickers, and displayed a sign in front of his house and a bumper sticker on his automobile. He also relies on deposition testimony that he appeared in a local television advertisement supporting York. Although he did not speak and was only visible from the neck down, plaintiff Derrick claimed that "a lot of people that saw it came to me and said they recognized me." He also stated that he believed Glenn Woody, an employee of the sheriff's department, told defendant of Derrick's support for York. This belief is corroborated by Woody's affidavit, in which Woody states:

3. After Leon Tollett was elected sheriff, Leon Tollett told me that Bill Derrick was a good officer but that he "hauled around the wrong bumper sticker".

4. After Leon Tollett was elected Sheriff, he fired Bill Derrick as a deputy sheriff with the Sheriff's office for Cumberland County, Tennessee.

5. I understood Leon Tollett's reference to the "wrong bumper sticker" to mean that Bill Derrick was fired from his job because he supported Leon Tollett's opponent in the election for Sheriff.

We find that plaintiff Derrick has raised genuine issues regarding whether defendant knew of Derrick's political affiliation and whether defendant fired plaintiff because of his political affiliation. He has pointed out evidence in the record that could allow a jury to conclude that defendant knew that plaintiff Derrick supported his opponent in the election, and fired him for that reason.

■ Because plaintiff Derrick has raised a genuine issue regarding the reason for his dismissal, we must consider whether his claim that defendant violated his First Amendment rights nevertheless fails because his position as a deputy falls within the *Branti* exception to the prohibition against patronage dismissals. This is an issue of law appropriate for us to decide. *See, e.g., Mumford v. Basinski,* 105 F.3d 264, 271 (6th Cir. 1997).

The Supreme Court first considered the constitutionality of patronage based dismissals in *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), a case involving sheriff's department employees. As the Court later remarked,

> In *Elrod,* it was clear that the duties of the employees—the chief deputy of the process division of the sheriff's office, a process server and another employee in that office, and a bailiff and a security guard at the Juvenile Court of Cook County—were not of that character [where private political beliefs would interfere with the discharge of public duties], for they were, as Mr. Justice Stewart stated, "nonpolicymaking, nonconfidential" employees.

*Branti,* 445 U.S. at 517, 100 S.Ct. at 1294 (quoting 427 U.S. at 375, 96 S.Ct. at 2690–91 (Stewart, J., concurring)). This analysis, however, does not compel a conclusion that deputy sheriffs fall outside the *Branti* exception. The case-by-case nature of the test established in *Branti* requires courts to look at the responsibilities and duties of each position. *See O'Hare Truck Serv., Inc. v. City of Northlake,* — U.S. —, —, 116 S.Ct. 2353, 2358, 135 L.Ed.2d 874 (1996) ("[T]he inquiry is whether the affiliation requirement is a reasonable one, so it is inevitable that some case-by-case adjudication will be required even where political affiliation is the test the government has imposed."). Thus, despite the context of *Elrod,* several

circuits have held that deputies may be fired for their political affiliation.

The Seventh Circuit has concluded "that deputy sheriffs operate with a sufficient level of autonomy and discretionary authority to justify a sheriff's use of political considerations when determining who will serve as deputies." *Upton v. Thompson*, 930 F.2d 1209, 1218 (7th Cir.1991); *accord Dimmig v. Wahl*, 983 F.2d 86, 87 (7th Cir.1993). In *Upton*, the Seventh Circuit noted that sheriffs are often elected because of "the popular approval of his expressed political agenda." 930 F.2d at 1215. It reasoned further that,

> [p]articularly in a small department, a Sheriff's core group of advisers will likely include his deputies. A deputy sheriff, in implementing the Sheriff's basic policy, will "make some decisions that will actually create policy." ... [D]eputies on patrol or other assignment frequently work autonomously, giving them wide latitude and discretion in performance of their duties and in the implementation of department goals. In order to promote public confidence in law enforcement, the Sheriff depends on his deputies to publicly project his competence and the competence of the office. Deputies are also expected to provide the Sheriff with, truthful, accurate and beneficial information which he needs to make decisions and administer his office.

*Id.* (citation omitted) (quoting *Livas v. Petka*, 711 F.2d 798, 801 (7th Cir.1983)).

In *Terry v. Cook*, 866 F.2d 373 (11th Cir. 1989), the Eleventh Circuit considered a newly-elected sheriff who refused to rehire any of his predecessor's employees. It held that under Alabama law, "[t]he closeness and cooperation required between sheriffs and their deputies necessitates the sheriff's absolute authority over their appointment and/or retention." *Id.* at 377. The court continued, "[u]nder the *Elrod-Branti* standard, loyalty to the individual sheriff and the goals and policies he seeks to implement through his office is an appropriate requirement for the effective performance of a deputy sheriff." *Id.* Thus, the Eleventh Circuit, like the Seventh, allows the discharge of sheriff's deputies based on their political loyalties or affiliations.

The Fourth Circuit, recently reversing its position on this issue, has joined the Seventh and Eleventh Circuits in holding that political affiliation is an appropriate requirement for the position of deputy sheriff. In *Jones v. Dodson*, 727 F.2d 1329, 1338 (4th Cir. 1984), the Fourth Circuit held that deputy sheriffs could not be discharged justifiably on the basis of political affiliation. It recently revisited this question in *Jenkins v. Medford*, 119 F.3d 1156 (4th Cir.1997) (en banc), and overruled *Dodson*. In *Jenkins*, deputy sheriffs in North Carolina alleged that they were fired by a newly-elected sheriff because they did not support his election campaign. The Fourth Circuit, adopting the logic of *Cook* and *Upton*, held that political affiliation is an appropriate requirement for deputy sheriffs because "[d]eputy sheriffs play a special role in implementing the sheriff's policies and goals." *Id.* at 1162. Like the Seventh Circuit in *Upton*, the Fourth Circuit found that deputies on patrol exercise significant discretion, and that the sheriff relies heavily on deputies to implement his policies and maintain his political goodwill. *Id.* It concluded that political affiliation and campaign activity were appropriate grounds for dismissal because "[e]ither basis serves as a proxy for loyalty to the sheriff." *Id.* at 1164.[5]

In contrast, the Third Circuit reached the opposite conclusion when it considered this question in *Burns v. County of Cambria*, 971 F.2d 1015 (3d Cir.1992). The plaintiffs in *Burns* included three deputy sheriffs who were fired after the election of a new sheriff in Cambria County. Both parties agreed that the primary duties of deputy sheriffs in Cambria County were to serve process, transport prisoners, and provide courtroom security. *Id.* at 1022. The court concluded

---

5. The court also noted that North Carolina sheriffs can be held civilly liable for the acts of their deputies. In dissent, Judge Motz concluded that "under North Carolina law a deputy does not have the kind of discretion that allows for wholesale dismissal of each and every deputy on the grounds of political affiliation." 119 F.3d at 1168. She also noted that a sheriff is only civilly liable for the acts of one of his deputies if that deputy was performing " 'ministerial' acts under the authority and supervision of the sheriff." *Id.*

as follows: "on the basis of the record, which fails to show that Cambria County deputy sheriffs enjoy significant autonomy or discretion in their jobs or that their political activities are relevant to their duties, we hold that [the defendant] has failed to · demonstrate that firing deputy sheriffs for their political affiliation or activities comes within the narrow exception for political dismissals recognized in *Branti* and *Elrod.*" *Id.* at 1023.

■ Sheriff Tollett testified at deposition that the position of deputy sheriff was at the bottom of the chain of command in the Cumberland County Sheriff's Department. The record shows that a deputy's primary duty is to patrol the roads of the county, enforcing the laws of Cumberland County and the State of Tennessee. Three deputies are on patrol individually at any given time; each is responsible for one-third of the county. They carry firearms and respond to crisis situations. Derrick testified that even as shift supervisor he "just enforced the policies that were made by someone else." This record provides no greater details of the duties of a sheriff's deputy in Cumberland County.

We conclude that defendant has failed to show that political affiliation is "an appropriate requirement for the effective performance" of this position. The record does not show that Cumberland County deputy sheriffs had the types of specific duties or responsibilities, or the amount of discretion or policymaking authority, that would make political affiliation an appropriate requirement for employment. Defendant offered no evidence that shows that supporting defendant's political opponent would in any way prevent a Cumberland County deputy sheriff from effectively performing his duties. It may be that in future cases, defendants will show that the duties and responsibilities of a sheriff's deputy make political affiliation an appropriate requirement for employment in that position. Based on the record before us, however, we find that the position of Cumberland County deputy sheriff does not

fall within the *Branti* exception for patronage based dismissals, *see Branti,* 445 U.S. at 518, 100 S.Ct. at 1294–95.[6] We find, therefore, that plaintiff Derrick's claim states a constitutional violation.

■ We now turn to the question of whether defendant is entitled to qualified immunity. We must decide whether it was clearly established, as of September 1, 1994, that it was unconstitutional for a sheriff to fire one of his deputies because he supported a campaign opponent. In *McCloud v. Testa,* we "conclude[d] that it is improper to grant qualified immunity to every defendant who has taken an adverse employment action against a plaintiff occupying or previously occupying a public office that the Supreme Court or the Sixth Circuit has not yet explicitly held falls into or outside of the *Branti* exception." 97 F.3d at 1547. Thus, an absence of cases directly on point does not indicate that the constitutionality of a patronage based discharge has yet to be established. In *McCloud,* we developed a categorical approach to help establish and define which public offices fall within the *Branti* exception. This approach, however, will not remove all uncertainty. "In connection with using these categories ... if there is any ambiguity about whether a position falls into any of them (and so also within the *Branti* exception), it is to be construed in favor of the governmental defendants when the position at issue is unclassified or non-merit under state law." *Id.* at 1557. This reflects the basic tenet of the qualified immunity doctrine, that objectively reasonable officers should not be subjected to the costs of litigation when their conduct does not violate clearly established constitutional norms. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

■ Although *Elrod* seemingly established that low-level sheriff's department employees fall outside this exception, we held in *Cagle v. Gilley,* 957 F.2d 1347 (6th Cir.1992), that it was not clearly established that deputy sheriffs were protected from patronage

6. In·*McCloud* we established a framework for district courts to apply "in future patronage cases." 97 F.3d at 1557. Although this case arose before *McCloud* was decided, we note that

the deputy sheriff position. in this case does not fall within any of the four categories of positions for which patronage. based dismissal is permissible. · · ..

based dismissals. Unfortunately, we granted a sheriff qualified immunity, without first determining whether there had actually been a constitutional violation. 957 F.2d at 1349. Therefore, *Cagle* effectively established only that in 1992 the state of the law regarding patronage dismissals of sheriffs' deputies was not clearly established.[7] In the time between *Cagle* and September 1, 1994, no further cases added clarity to the status of deputy sheriffs. The split among circuits regarding this issue also indicates the unsettled nature of the law regarding the status of deputy sheriffs. *Id.* For these reasons, we agree with the District Court that defendant is entitled to qualified immunity in this case. We affirm its grant of summary judgment in favor of defendant in his individual capacity and against plaintiff Derrick.

■■■ Although the District Court's memorandum and order granted summary judgment in favor of defendant in his individual and official capacities, the only reason it provided was its conclusion that defendant was entitled to qualified immunity. Qualified immunity shields defendant from personal liability, but it does not shield him from the claims brought against him in his official capacity. The Supreme Court, in *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), explained this difference between § 1983 claims brought against an official in his individual and official capacities:

> When it comes to defenses to liability, an official in a personal-capacity action may, depending on his position, be able to assert personal immunity defenses, such as objectively reasonable reliance on existing law. In an official capacity action, these defenses are unavailable. The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, qua entity, may possess, such as the Eleventh Amendment.

473 U.S. at 166–67, 105 S.Ct. at 3105–06 (citations omitted). Thus, plaintiff Derrick's official-capacity claim against defendant survives the grant of qualified immunity that

disposed of his individual-capacity claim against defendant. Therefore, with respect to Derrick's claim against defendant in his official capacity, we reverse the grant of summary judgment in favor of defendant in his official capacity, and against plaintiff Derrick.

Neither the District Court nor either of the parties on appeal has discussed whether plaintiff Derrick's claim successfully states a § 1983 claim against Sheriff Tollett in his official capacity, or whether this claim is barred by some form of sovereign immunity. Therefore, we remand plaintiff Derrick's case to the District Court for consideration of his claim against defendant in his official capacity.

### IV.

For the foregoing reasons, we AFFIRM the District Court's order granting summary judgment in favor of defendant in his individual capacity in each of the six cases before us. With respect to plaintiff Derrick's case, we REVERSE the grant of summary judgment in favor of defendant in his official capacity, and REMAND to the District Court for consideration of this claim. We AFFIRM the District Court's order granting summary judgment in favor of defendant in his official capacity and against plaintiffs Hall, Cooper, Griffin, Hedgecoth, and McDaniel.

---

7. The Court in *Cagle* determined that, although *Hollifield v. McMahan,* 438 F.Supp. 591 (E.D.Tenn.1977) held that a sheriff's deputy could not be discharged on the basis of his political loyalty, the precedent from that district had not "clearly established the principle that political affiliation is not a proper job requirement for a deputy sheriff." 957 F.2d at 1349.