**Daniel B. NEELY et al., Plaintiffs–Appellants,**

**v.**

**CONSOL INC., and Consol of Kentucky Inc. Defendants–Appellees.**

No. 00–5775.

United States Court of Appeals, Sixth Circuit.

Jan. 15, 2002.

Before MOORE and COLE, Circuit Judges; O'MEARA,* District Judge.

* The Honorable John Corbett O'Meara, United States District Judge for the Eastern District of Michigan, sitting by designation.

## OPINION

MOORE, Circuit Judge.

In this diversity case, Daniel B. Neely and approximately twenty-four other plaintiffs, the heirs of R.B. Neely (hereinafter "the Neely heirs"), appeal the district court's summary judgment for defendants Consol Inc. and Consol of Kentucky Inc. (hereinafter "Consol"). The Neely heirs sued Consol in federal court claiming that Consol had breached the terms of a seventy-five-year lease agreement originally entered into by Consol's predecessor in interest and R.B. Neely in 1948. This lease gave Consol the right to mine coal from the property in exchange for an annual advanced royalty payment of $1,000 a year and an additional royalty of ten cents per ton of coal actually mined. In 1997, the Neely heirs determined that this lease was a bad bargain and brought the present case. Initially seeking both damages and rescission of the lease, the Neely heirs later dropped the damages claim and sought only to have the lease rescinded, based on various contract-law theories. In granting Consol's motion for summary judgment, the district court concluded that the Neely heirs had failed to establish an issue of material fact regarding whether Consol had breached the lease agreement and thus that the fifteen-year statute of limitations for challenging the validity of a contract under Kentucky law had expired long ago.

On appeal, the Neely heirs first argue that the district court never had jurisdiction over this case because the amount in controversy does not exceed $75,000, the jurisdictional requirement found in 28 U.S.C. § 1332(a). This argument is premised on a technical error by the Neely heirs' trial counsel. Filed in 1999, three

years after the jurisdictional amount in diversity cases was increased from $50,000 to $75,000, the Neely heirs' amended complaint alleged that "the plaintiffs have been damaged in an amount in excess of Fifty Thousand ($50,000) Dollars, the jurisdictional limits of this Court." Joint Appendix (J.A.) at 29. Despite this technical error, however, we conclude that the amount in controversy exceeds $75,000 because this dispute is really over the lease and the right to mine the coal under the property. The Neely heirs' interest in this matter appears to have been spurred by a tax bill from the State of Kentucky assessing the value of the unmined coal alone at $516,906. Thus, the amount in controversy, equal to the value of the contract as a whole, easily exceeds the jurisdictional amount requirement found in 28 U.S.C. § 1332(a).

The Neely heirs next argue that the terms of the 1948 lease agreement have become unconscionable over time. Because this argument was not raised below—below the Neely heirs argued that the lease agreement was "unconscionable on its face"—we do not consider it on this appeal. Finally, the Neely heirs argue that the district court erred in holding that the fifteen-year statute of limitations had expired on their claim. They argue that there was an issue of material fact regarding whether Consol had breached the lease by failing to make rental payments within the last fifteen years. The Neely heirs, however, failed to produce specific facts to support the existence of these alleged breaches, and thus we conclude that summary judgment was appropriate on the statute-of-limitations ground.

For these reasons, we AFFIRM the judgment of the district court.

## I.  BACKGROUND

In 1948, R.B. Neely and Consol's predecessor in interest entered into a seventy-five-year lease agreement in which Neely agreed to lease 448 acres of land located along the Spring Fork of Quicksand Creek in Breathitt County, Kentucky, to Consol's predecessor in interest in exchange for an annual payment of $1,000 and an additional royalty of ten cents "per ton of two thousand pounds of clean coal mined and recovered from the subject property." J.A. at 26 (Am.Compl.¶ 10). The lease also provided that the coal company would credit the annual payments against the additional royalties owed, so that no additional royalties would be paid to Neely or his heirs for mined coal until the amount of royalties owned exceeded the amount paid as annual rental payment. In addition, the lease provided that the coal company could recoup past rental payments out of any additional royalties owed on mined coal. *See* J.A. at 46 (Lease). Thus, under the terms of the lease the coal company can carry forward its recoupable balance and make up for past annual payments out of owed royalties on mined coal. Consol and its predecessors in interest have mined the property for only one brief period, between November 1989 and February 1990, removing 73,988 tons of coal during that time. As of January 1998, Consol informed the Neely heirs that the lease's recoupable balance was $35,291.38. *See* J.A. at 127 (Mason Letter).

In August 1997, the Neely heirs received a notice from the State of Kentucky informing them that they had been assessed an unmined minerals tax of $5,170, reflecting the value of the unmined coal under the leased property, $516,906. After receiving this tax bill, the Neely heirs apparently became interested in making better use of the leased property and hired an attorney. In October 1997, the Neely heirs' attorney mailed Consol a letter demanding that Consol "give serious consideration to renegotiating the lease . . . upon some equitable basis." J.A. at 125. If

Consol decided not to renegotiate, the Neely heirs threatened litigation "seeking complete termination of the leasehold" based on various contract-law theories. J.A. at 125–26. After Consol refused to renegotiate the terms of the lease in January 1998, the Neely heirs filed the present lawsuit in the U.S. District Court for the Eastern District of Kentucky based on the complete diversity of the parties.

The Neely heirs' amended complaint stated five counts: (1) a breach of contract claim, alleging that Consol had failed to make an unspecified number of annual rental payments over the life of the lease; (2) a claim that the lease agreement should be voided because of lack of mutuality; (3) a claim that the lease agreement should be voided because it was fraudulent; (4) a claim that the lease agreement should be voided because it was "unconscionable on its face"; and (5) a claim that the lease agreement should be voided because of the alleged incapacity of R.B. Neely to contract in 1948. The prayer for relief requested the following remedies: (1) a judgment against Consol for unpaid royalties; (b) damages (in excess of $50,000) based on the unconscionability of the lease agreement; (3) a declaration that the lease agreement was null and void; (4) costs; and (5) any other relief to which the Neely heirs were entitled by law. The Neely heirs subsequently abandoned their claims for damages and announced their intention to seek only the remedy of rescission.

The only evidence that the Neely heirs have produced that even suggests that Consol has breached the terms of the 1948 lease agreement is the deposition of Daniel Neely, one of the Neely heirs. In this deposition, Daniel Neely testified that the Neely heirs' allegations of breach by Consol were based on the records of the lease account. In examining the Neely heirs' records of the lease account, Daniel Neely discovered that the recoupable balance, as listed on the account statements "did not add up to the amount of the lease agreement." J.A. at 138. For example, on a 1984 account statement, Consol listed the recoupable balance as of December 1984 as $13,948.55. See J.A. at 144, 158. Daniel Neely testified that this indicated to him that this was "a complete record of the payments to date in December of '84," J.A. at 144, but that this figure, if it really reflected a complete record of payments under the lease agreement, should have been much higher. Daniel Neely also testified that a later statement of the account showed a similar deficiency. See J.A. at 148.

Based on these records, Daniel Neely estimated that Consol had failed to make somewhere between $5,000 and $14,000 in payments over the life of the lease. Neely did not, however, testify that he had any knowledge of any specific instances of non-payment, nor did he testify that he or anyone else had ever notified Consol of nonpayment. The lease agreement provides that the lessor may cancel the agreement ninety days after giving written notice to the lessee of any default or overdue payments if the lessee has failed to remedy the default during that time. See J.A. at 46 (Lease). If Consol had failed to make specific payments in the past, the Neely heirs could have canceled the lease agreement by giving Consol written notice of the default and "re-entry upon the leased premises." J.A. at 46 (Lease).

In April 2000, Consol filed a motion for summary judgment, arguing that the Neely heirs, or their predecessors in interest, had received all rental and royalty payments that they were due over the life of the lease agreement and that the question whether the lease should be voided was a question of law to be decided by the court. Consol pointed to the fifteen-year statute of limitations for challenges to the validity

of written contracts under Kentucky law, Ky.Rev.Stat. § 413.090, and argued that it was entitled to judgment as a matter of law on that basis. In addition, Consol argued that the Neely heirs' claims were barred by the doctrines of equitable estoppel and laches. Consol further argued that it was entitled to judgment as a matter of law on the Neely heirs' claims that the lease agreement was invalid under a number of contract theories.

In support of its motion, Consol submitted the affidavit of its Kentucky land agent, James O. Childers, who stated that he "ha[d] reviewed the payment records of [Consol] and its predecessors in interest under the lease" and "confirmed that they reflect that the lessee has made all monthly minimum and other royalty payments to the lessor as required under the lease since 1949." J.A. at 54. In this affidavit, Childers also addressed Daniel Neely's deposition testimony. As Childers explained:

Mr. Neely reasoned that since the minimum royalty is $1,000 per year, and by 1984 the lease had been in existence over 35 years, the total past balance should have been higher.... Mr. Neely's understanding of the document is in error because the lease payment form only reflects a balance forward, similar to what one would find on a bank account statement for the existing balance from the previous month. It is not a total historical balance nor a sum of all recoupable balances previously paid.

J.A. at 55. Finally, Childers stated that there was no record in Consol's files "indicating that any specific lease payments have been missed or that the lessor has ever claimed that the lessee was in default for failure to make lease payments." J.A. at 55.

In their response to Consol's summary judgment motion, the Neely heirs addressed the Childers affidavit, stating that the affidavit "refute[d]" Daniel Neely's belief that all lease payments had not been made but that "the defendants have not produced any proof to the contrary." J.A. at 60. The Neely heirs' response continues:

If indeed the defendants have not tendered all minimum royalty payments, the statute of limitations is not applicable, as a cause of action for breach of the lease agreement can be raised at any time.

Further, if all minimums have not been paid, the acceptance of partial payments on the monies due and owing does not entitle the defendants to rely upon estoppel or laches as a legal bar for the collection of all monies or other remedies.

The plaintiffs recognize the legal merit of the defendants' arguments if they can establish these payments were made and accepted by the plaintiffs and/or their predecessors-in-interest. Therefore, it is clear that there are genuine facts in dispute in this action and the defendants' Motion for Summary Judgment must be denied.

J.A. at 60.

In reply, Consol argued that the Neely heirs had "not pointed to a single specific instance of nonpayment" and that the Childers affidavit "remains unrefuted and the uncontroverted record ... is that the payments have been made and accepted." J.A. at 63. Moreover, Consol indicated that it produced the payment records described in the Childers affidavit for the Neely heirs' inspection and copying but that the Neely heirs chose not to review them. *See* J.A. at 64 n.1. Consol's reply concluded:

A non-moving party "cannot rest upon [its] pleadings" but must show the Court that "there is a genuine issue for trial." *Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir.1997). It was incumbent upon Plain-

tiffs in responding to the Motion [f]or Summary Judgment to "present significant and probative evidence in support of its complaint." *Id.* Plaintiffs have not done this, but instead just make vague allegations that may be some payments were missed somewhere over the years. If there were any factual basis for these allegations. Plaintiffs should have come forward with the facts. Having failed to do so, the facts established in Mr. Childers' Affidavit remain undisputed in the record and even Plaintiffs conceded that the Defendants are correct on the law. J.A. at 64–65.

The district court granted Consol summary judgment on May 8, 2000. In its opinion, the district court explained that the Neely heirs' "contention that the defendants failed to make all payments and royalties due under the lease argument is insufficient to establish a genuine issue of material fact. Conclusory allegations are insufficient to establish one's claim and avoid summary judgment as a matter of law." J.A. at 133–34. The district court continued:

> Other than a general reference to the documents of Daniel Neely, the plaintiffs have failed to offer any evidence of nonpayment. For example, Daniel Neely's deposition indicates that he has no evidence that either R.B. Neely or any heirs contacted the defendants about nonpayment of the royalties. Furthermore, prior to the filing of this action, he had never informed the defendants that he felt certain royalty payments had yet to be made.

> It is not the strength of Defendants' proof, but the insufficiency of Plaintiffs' proof that leads the Court to conclude that no genuine issue of material fact exists in this matter. In light of Plaintiffs' recognition of the legal merit of Defendants' argument regarding the statute of limitations governing this mat-

ter, and the merit of same as accepted by the Court, the defendants are hereby entitled to judgment as a matter of law.

J.A. at 134 (Dist.Ct.Op.). This appeal followed.

## II. ANALYSIS

The district court's order granting summary judgment is reviewed de novo. *See Parry v. Mohawk Motors of Mich., Inc.,* 236 F.3d 299, 307 (6th Cir.2000), *cert. denied,* —— U.S. ——, 121 S.Ct. 2594, 150 L.Ed.2d 752 (2001). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When reviewing a motion for summary judgment, this court draws all reasonable inferences in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Petrey v. City of Toledo,* 246 F.3d 548, 553 (6th Cir.2001). To prevail, the non-movant must show sufficient evidence to create a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## A. Amount in Controversy

The Neely heirs originally brought the present case in federal court. Having lost below, they now argue (both in their brief and in a separate motion to dismiss the appeal) that the district court did not have subject matter jurisdiction over this case because their complaint failed to satisfy the jurisdictional amount found in 28 U.S.C. § 1332(a). The Neely heirs point to their complaint and amended complaint, both of which alleged that the Neely heirs were entitled to damages in excess of

$50,000. *See, e.g.,* Appellant's Br. at 7. They also argue that the minimum royalty payments due under the lease agreement between 1948 and 2000 only amounted to $52,000, less than the current jurisdictional amount. Consol argues, *inter alia,* that it is clear from the face of the complaint that the jurisdictional amount requirement is satisfied in this case, given the "value of the Lease." Appellee's Br. at 9.

Consol has the better of this argument. The Neely heirs' request for rescission of the lease agreement is enough, on its own, to satisfy the jurisdictional amount found in 28 U.S.C. 1332(a). We have held that "where a plaintiff seeks to rescind a contract, the contract's entire value . . . is the amount in controversy." *Rosen v. Chrysler Corp.,* 205 F.3d 918, 921 (6th Cir.2000). The lease agreement at issue in this case is certainly worth more than $75,000, given that the *minimum* amount owed to the Neely heirs under the lease agreement is $75,000—$1,000 per year, minimum, over seventy-five years—even if no coal were ever mined from the site. The Neely heirs' primary reason for suing Consol in the first place was their belief that these payments, totaling $75,000, were inequitable given the value of the unmined coal under the leased property, which has been valued, recently, at over $500,000. Thus, in requesting rescission of the contract, the Neely heirs have alleged an amount in controversy that exceeds $75,000, the jurisdictional requirement found in § 1332(a).

This is the case even if the court does not consider the Neely heirs' request in their complaint and amended complaint for damages in excess of $50,000, which was withdrawn during discovery. The requested damages, however, must be considered

in determining whether the jurisdictional amount requirement has been satisfied. *See, e.g., Jones v. Knox Exploration Corp.,* 2 F.3d 181, 183 (6th Cir.1993) (noting that "subsequent events that change the amount in controversy" do not divest a federal court of subject matter jurisdiction). Thus, considering both the value of the lease as a whole and the Neely heirs' request for damages, we conclude that the amount in controversy is well in excess of the jurisdictional amount.

B. Statute of Limitations/Summary Judgment

Even if the district court had subject-matter jurisdiction, the Neely heirs argue in the alternative that it erred in holding that the applicable fifteen-year statute of limitations had expired on their claim. On this front, the Neely heirs make two very different arguments. First, they argue that the district court erred in granting summary judgment on the statute-of-limitations grounds because their argument was that the terms of the 1948 lease had become unconscionable over time and thus, in effect, the fifteen-year statute of limitations found in Ky.Rev.Stat. § 413.090(2)[1] would not limit their claim. Second, the Neely heirs argue that they raised an issue of material fact regarding whether Consol had breached the lease by failing to make annual payments within the last fifteen years and that this issue precluded summary judgment based on the statute of limitations. We conclude that neither of these arguments has merit.

The Neely heirs first argue that "the Court refused to examine the question in light of whether the payment terms

---

**1.** Ky.Rev.Stat. Ann. § 413.090 states, in relevant part: "[T]he following actions shall be commenced within fifteen (15) years after the cause of action first accrued . . . . [a]n action upon a . . . written contract." The parties do

not dispute that this is the relevant statute of limitations under state law. *See also Hatton v. Falcon Coal Co.,* 734 S.W.2d 806 (Ky.Ct. App.1987) (applying fifteen-year statute of limitations to a dispute over a mineral lease).

of the 1948 lease had become unconscionable over time. That failure to consider a central question in the case is clear error meriting reversal of the district court's opinion." Appellant's Br. at 16. Despite their reproach of the district court, however, the Neely heirs actually did not make this argument below. In the district court, the Neely heirs argued that the 1948 lease agreement was "unconscionable on its face." *See, e.g.,* J.A. at 28 (Am. Compl.¶ 27). Thus, the Neely heirs stated in their amended complaint that "[t]he extremely low royalty rate and rental payment amounts are clearly unconscionable terms which must not be enforced." J.A. at 28. Moreover, the Neely heirs did not produce any evidence in opposition to Consol's motion for summary judgment that indicates that their unconscionability argument related to the length of the lease agreement or changed market conditions.

"As a general rule, this court will usually decline to entertain arguments not presented in the first instance to the trial court." *Brown v. Crowe,* 963 F.2d 895, 897 (6th Cir.1992). Given the Neely heirs' failure to raise this issue below, we decline to entertain it now. However, we note in passing that there is little authority to support the proposition that changed circumstances can render contract terms unconscionable over time. Generally speaking, the unconscionability of a contract or term is considered in light of circumstances "at the time the contract is made." Restatement (Second) of Contracts § 208 (1979).[2] Some courts have demonstrated a willingness to consider the argument that the changed circumstances can render a contract or contract term unconscionable, *see Kansas Baptist Conv. v. Mesa Operating Ltd. P'ship,* 253 Kan. 717, 864 P.2d 204 (1993), but whether Kentucky courts would entertain this claim is not at all clear. The Neely heirs cite a Kentucky appellate opinion to support their argument, but it has been ordered that this opinion not be published.[3] Under the Kentucky rules, "[o]pinions that are not to be published

---

**2.** Alternatively, the Neely heirs' argument could be interpreted as invoking the doctrines of mistake and/or supervening impracticability. For example, Restatement (Second) of Contracts § 153. When Mistake of One Party Makes a Contract Voidable, states:

> Where a mistake of one party at the time a contract was made as to a basic assumption on which he made the contract has a material effect on the agreed exchange of performances that is adverse to him, the contract is voidable by him if he does not bear the risk of the mistake ... and
> (a) the effect of the mistake is such that enforcement of the contract would be unconscionable, or
> (b) the other party had reason to know of the mistake or his fault caused the mistake.

*Id.* As the commentary notes, " § 208 ... is not itself applicable to such cases since the unconscionability does not appear at the time the contract is made," *id.* cmt. c, but only becomes evident later. The Neely heirs could have argued that R.B. Neely erred in 1948 in his assumptions regarding market conditions for coal and that the contract is voidable on this basis, given the present unconscionability of the terms of the lease agreement. The Restatement is clear, however, that "mistakes as to market conditions ... do not [generally] justify avoidance under the rules governing mistake." *Id.* § 152 cmt. b. Thus, even if the Neely heirs did not bear the risk of changing market conditions over the life of the seventy-five-year lease agreement, framing the issue in this way would not assist their case. The same difficulty exists with respect to the supervening impracticability doctrine. *See id.* § 261 cmt. b (noting that "[t]he continuation of existing market conditions" is not the sort of basic assumption of the parties covered by the rule).

**3.** *Kentucky West Virginia Gas Co. v. Interstate Natural Gas Co.,* Nos.1988–CA–001460–MR, 1988–CA–001953–MR, 1998–CA–002036–MR to 1998–CA–002038–MR, 1998–CA–003186–MR, & 1999–CA–000186–MR, 2000 WL 1228222 (Ky.Ct.App. June 9, 2000), *as modified Aug. 25, 2000, on denial of reh'g.*

shall not be cited or used as authority in any other case in any [Kentucky] court." Ky. R. Civ. P. 76.28(4)(c). Given that we must apply Kentucky state law in deciding this case, we may not consider as authoritative an opinion that could not be cited as authority in Kentucky courts. We have not found any other support in Kentucky law for the proposition advanced by the Neely heirs in this appeal.[4] Even if the Kentucky courts recognized this proposition, it is not clear that the terms of the lease agreement at issue are presently unconscionable; it is more likely that the lease agreement at issue represents "a simple old-fashioned bad bargain." *Louisville Bear Safety Serv., Inc. v. S. Cent. Bell Tel. Co.*, 571 S.W.2d 438, 440 (Ky.App. 1978) (quotation omitted). In any event, since the issue of unconscionability over time was not raised below, we decline to resolve it here.

■ Second, the Neely heirs argue that there was a dispute of material fact regarding whether Consol had breached the lease by failing to make rental payments within the last fifteen years and that this "presented a jury question which [should have] prevented entry of summary judgment." *See, e.g.,* Appellant's Br. at 16. Consol, on the other hand, argues that the Childers affidavit established that Consol had made all payments due and that the Neely heirs failed to produce evidence in response to this affidavit to support their claim that Consol had breached the lease agreement. Given that the Neely heirs

"never offered any proof of default," Consol argues that this court should affirm the district court's judgment. Appellee's Br. at 21.

Once again, Consol has the better of this argument. In support of its motion for summary judgment, Consol produced the Childers affidavit, which stated that, based on an examination of the records, Consol had made all payments due under the lease agreement. If, in fact, Consol had made all such payments, the Neely heirs' claims would be barred by the fifteen-year statute of limitations. Once Consol met the initial burden of demonstrating that there is no issue of material fact, the Neely heirs were required to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). In response to Consol's motion, the Neely heirs pointed to the deposition of Daniel Neely, who testified that Consol had failed to make somewhere between five and fourteen years' worth of payments based on conclusions drawn from statements of the recoupable balance on the lease account.

As the district court correctly determined, however, Daniel Neely had no personal knowledge of any actual instances of nonpayment. Thus, his deposition can hardly be said to "set forth specific facts" demonstrating an issue of material fact regarding whether Consol breached the terms of lease. In addition, the Neely heirs have failed to produce any evidence that they or their predecessors in interest have ever given Consol or its predecessors

---

4. We have, however, discovered two narrow exceptions, under Kentucky law, to the rule that unconscionability is determined at the time a contract is formed. First, "[a]n antenuptial agreement will not be enforced if facts and circumstances have changed so as to make its enforcement unconscionable." *Gentry v. Gentry*, 798 S.W.2d 928, 936 (Ky.1990). Second, an old line of Kentucky cases hold that specific performance of a real estate contract will not be ordered when "conditions

ha[ve] so changed" as to render enforcement of the contract unconscionable. *Bean v. Brown*, 202 Ky. 215, 259 S.W. 47, 49 (1924); *see also, e.g., Wollums v. Horsley*, 93 Ky. 582, 20 S.W. 781, 781 (1892) ("A contract ought not to be carried into specific performance unless it be just and fair in all respects."). Neither of these exceptions to the general rule apply to the particular facts at issue on this appeal.

in interest written notice of nonpayment, which could have enabled them, under certain conditions, to cancel the lease agreement. Thus, we hold that the district court correctly concluded that Daniel Neely's deposition was insufficient to establish a genuine issue of material fact. The Neely heirs failed to carry their burden, as the nonmoving party, under Fed.R.Civ.P. 56, and the district court properly granted Consol's motion for summary judgment based upon the statute of limitations.

## III.  CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.