RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0094P (6th Cir.)
File Name: 02a0094p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

DANNY RAY HEGGEN, et al.,
        *Plaintiffs-Appellees,*

    *v.*

GARY LEE, Hopkins County
Sheriff, in both his individual
and official capacities,
        *Defendant-Appellant,*

HOPKINS COUNTY,
KENTUCKY,

        *Defendant.*

No. 00-6315

Appeal from the United States District Court
for the Western District of Kentucky at Owensboro.
No. 99-00122—Joseph H. McKinley, Jr., District Judge.

Argued: January 30, 2002

Decided and Filed: March 20, 2002

Before: JONES, GUY, and CLAY, Circuit Judges.

that Defendant discharged Plaintiffs for political reasons, then Defendant will have violated Plaintiffs' First and Fourteenth Amendment rights against patronage dismissal. Further, Defendant is not entitled to qualified immunity inasmuch as this Court's opinion in *Hall v. Tollett* should have alerted Defendant that refusing to rehire Plaintiffs for political reasons was impermissible. We **AFFIRM**.

_____

### COUNSEL

_____

**ARGUED:** John T. Soyars, FOSTER, SOYARS & ASSOCIATES, Hopkinsville, Kentucky, for Appellant. Evan E. Taylor, LAW OFFICE OF EVAN TAYLOR, Owensboro, Kentucky, for Appellees. **ON BRIEF:** John T. Soyars, FOSTER, SOYARS & ASSOCIATES, Hopkinsville, Kentucky, for Appellant. Evan E. Taylor, LAW OFFICE OF EVAN TAYLOR, Owensboro, Kentucky, for Appellees.

_____

### OPINION

_____

CLAY, Circuit Judge. Gary Lee, the sheriff of Hopkins County, Kentucky, appeals from the final judgment entered by the district court denying his motion for summary judgment on the issue of qualified immunity with respect to Plaintiffs' claims, brought pursuant to 42 U.S.C. § 1983, alleging that Plaintiffs were discharged in retaliation for supporting Lee's opponent in a past county sheriff's election. Specifically, Plaintiffs Danny Ray Heggen, Todd Blakely, and James F. Pendergraff, all of whom were Hopkins County deputy sheriffs, allege that as a result of supporting Lee's political opponent in the 1998 election for Hopkins County Sheriff, they were subsequently discharged in violation of their First and Fourteenth Amendment rights. For the reasons that follow, we **AFFIRM** the district court.

### BACKGROUND

In 1998, Defendant Gary Lee defeated former Sheriff Raymond Jones in the May 1998 primary election for sheriff of Hopkins County, Kentucky, and ran unopposed in the November general election. Each of the Plaintiffs were deputy sheriffs in Jones' administration.

Defendant's reliance on *Cope* is misplaced. This Court in *Cope* expressly stated that the parties had pointed to no law from the Sixth Circuit or the United States Supreme Court that would have put the county clerk on notice that her actions were unconstitutional. Defendant is foreclosed from arguing the same in the instant case because of *Hall*. The record shows that the actual duties of deputies in Hopkins County are essentially the same type of nonpolicymaking duties performed by the plaintiff in *Hall*. It is undisputed that Defendant informed Plaintiffs that they would not be rehired in late December 1998, more than a year after *Hall* was decided in October 1997. We believe that the right of these Plaintiffs to be free from patronage dismissals was "sufficiently clear," such that after *Hall*, a reasonable official would have understood that taking such an action against them for political reasons was unconstitutional. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *McCloud*, 97 F.3d at 1547. Thus, we agree with the district court that Defendant is not entitled to qualified immunity.[5]

## CONCLUSION

Defendant has failed to show that party affiliation is an appropriate requirement for the effective performance of Plaintiffs' former positions as deputy sheriffs in Hopkins County, Kentucky. Thus, if at trial the factfinder determines

---

[5]Defendant also argues that this Court has stated that deference should be given to the legislature's decision to classify a position as political by choosing not to afford it civil service protection. *See Rice*, 14 F.3d at 1143. Under state law, the sheriff may hire, and with certain exceptions, fire deputy sheriffs "at his pleasure." KY. REV. STAT. ANN. § 70.030(1). As we explained in *McCloud*, however, the so-called *Rice* canon moves in tandem with the availability of qualified immunity. Thus, "if it is already clearly established that a particular position falls into or outside of the *Branti* exception, then there is no need to invoke the *Rice* canon and . . . it is appropriate to grant or deny qualified immunity." *McCloud*, 97 F.3d at 1544. Because we hold that under *Hall* the law was clearly established that deputy sheriffs in Plaintiffs' positions could not be discharged for political reasons, there is no need to rely on the *Rice* canon for guidance.

Lee admits that he never solicited any support from Plaintiffs because he assumed that Plaintiffs would support Jones in the election. In addition, each Plaintiff actively supported Jones. Plaintiff Danny Ray Heggen testified at his deposition that he spoke with people in the area where he lived about Jones, had bumper stickers on his car, a sign in his yard and encouraged neighbors to place signs in their yards in support of Jones. He also attended a political dinner before the 1998 May primary elections and sat at former Sheriff Jones' table. Lee attended the event as well.

Plaintiff Blakely also placed Jones' campaign signs in his yard and helped to put up Jones' signs in the yards of some of his family members as well. Blakely stated that a key Lee supporter, Maurice Wilson, mentioned to him after the primaries that Lee said he was unsure what he would do about certain members of the department who had campaigned for his opponent. According to Blakely, Wilson told him that Lee mentioned Blakely and Heggen by name.

Plaintiff James Pendergraff also supported Jones by speaking to his friends, family and members of the Fraternal Order of Police on Jones' behalf.[1] Pendergraff stated that he believes he told Wilson he was campaigning for Jones.

Heggen and Blakely's job duties largely mirrored each other and included road patrol, serving arrest warrants and civil papers, taking complaints and "working" auto accidents. Lee also stated that deputies transport prisoners and provide courtroom security. Pendergraff served primarily as a courtroom bailiff.

After taking office, Lee decided not to rehire Plaintiffs. He claims that he did not rehire Heggen because he "frequented"

---

[1]Both parties spell "Pendergraff's" name as "Penderfraff" on the covers of their appellate briefs. However, within their briefs and throughout the record, including Plaintiffs' complaint and amended complaint, his name is spelled "Pendergraff." We therefore use the spelling Pendergraff in this opinion, but note the discrepancy.

an adult entertainment club and because he had received complaints about Heggen's handling of several rape cases. He stated that he refused to rehire Blakely because he frequented the same club as Heggen. Plaintiffs claim that Defendant admits that he did not know about the adult entertainment club issue until after this suit was filed. Defendant stated at his deposition that he spoke with someone about the "clubs" or "Club Paradise," which Heggen and Blakely were accused of frequenting, for the first time in the summer of 1999. This occurred after Plaintiffs were informed that they would not be rehired in December 1998. Finally, Lee stated that he did not rehire Pendergraff because he promised Pendergraff's job as bailiff to someone else.

On June 9, 1999, the above-named Plaintiffs and former sheriff department office manager Kathy Walters-Knox filed the instant action against Lee, in his official and individual capacities, and Hopkins County. Plaintiffs amended their complaint in November 1999, adding Lee's wife, Elizabeth Ann Heggen, as a Plaintiff, and asserting a loss of consortium claim. Defendants moved for summary judgment, which the district court granted *in toto* with respect to Walters-Knox. However, as to Heggen, Blakely, and Pendergraff, the district court granted the motion as to Hopkins County and Lee in his official capacity only. The district court found that these three Plaintiffs had stated a viable constitutional claim against Lee in his individual capacity, and that Lee was not entitled to qualified immunity.[2] Lee appeals that ruling.

## DISCUSSION

### I.

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Johnson v. Univ. of*

---

[2] We assume that Mrs. Heggen's derivative loss of consortium claim has survived as well, although other than Plaintiffs' amended complaint, the record is silent as to Mrs. Heggen or the disposition of that claim.

precedent from the Sixth Circuit, the United States Supreme Court or its own court. *Cope*, 128 F.3d at 459 n.4. As we explained in *McCloud*, "it is improper to grant qualified immunity to every defendant who has taken an adverse employment action against a plaintiff . . . previously occupying a public office that the Supreme Court or the Sixth Circuit has not yet explicitly held falls into or outside of the *Branti* exception." *McCloud*, 97 F.3d at 1547. For that reason, this Court developed the four categories outlined in section A of this opinion in order "to help establish and define which public offices fall within the *Branti* exception." *Hall*, 128 F.3d at 429. We recognized that such an approach will not remove all ambiguity, and to the extent any ambiguity exists, it should be construed in favor of the government. *Id*.

Defendant argues that he is entitled to qualified immunity because when Plaintiffs were discharged, the law was not clearly established that deputy sheriffs in Hopkins County were protected from patronage dismissals. Defendant also contends that given the statutory discretion deputy sheriffs enjoy in Kentucky, a reasonable sheriff in his position would not have known that *Hall* was controlling authority.

To support his position, Defendant relies primarily on *Cope*. In that case, a newly elected county clerk refused to reappoint two deputy clerks who had supported the county clerk's opponent in the election. 128 F.3d at 456. The deputy clerks brought suit, alleging, among other things, they were not reappointed because they publicly expressed support for the clerk's opponent. *Id*. Addressing the issue of qualified immunity, this Court first stated that there was no published opinion from the Sixth Circuit or United States Supreme Court that would compel the conclusion that the clerk could not dismiss her deputy clerks for political reasons. *Id*. at 460. With no clearly established law in place, this Court looked at the Kentucky statutes, which could be interpreted as making the deputy county clerk the alter ego of the county clerk herself. *Id*.

J., dissenting) (stating that majority opinion's "wholesale pronouncement," based largely on broad state statutory language, that all North Carolina deputy sheriffs are policymakers and subject to patronage dismissals in lieu of case-by-case analysis of the position held by and specific duties of the individual plaintiffs, fails to comport with *Branti*).

In any event, as we have explained, under *Hall*, we must determine whether the patronage dismissals are appropriate on a case-by-case basis, considering the record before us. *Hall*, 128 F.3d at 429. Indeed, *Branti* compels as much. *Id.* at 427. Upon *de novo* review of the record, we believe that deputy sheriffs' duties in the instant case and those of the deputy sheriffs in cases such as *Hall* and *Burns*, where patronage dismissal was found to be impermissible, are identical. Thus, Defendant has failed to meet his burden of showing that deputy sheriffs in Hopkins County may be dismissed because of political affiliation.

**B.**

Under the doctrine of qualified immunity, "government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The rights at issue must have been "clearly established" not just in an abstract sense, but in a particularized sense. *Cope v. Heltsley*, 128 F.3d 452, 458 (6th Cir. 1997). Having determined that Defendant failed to carry his burden of showing that the deputy sheriff position falls within the exception to the general rule against patronage dismissals, we must determine whether the law was clearly established at the time Defendant refused to rehire Plaintiffs, such that a reasonable person in Defendant's position would have understood his conduct to be violative of Plaintiffs' constitutional rights. *Hall*, 203 F.3d at 438. To determine whether a right is clearly established, this Court has instructed district courts to look at binding

*Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000); FED. R. CIV. P. 56(c). This Court reviews a district court's order denying summary judgment on qualified immunity grounds *de novo*. *McCloud v. Testa*, 97 F.3d 1536, 1541 (6th Cir. 1996). We engage in a *de novo* review because "whether qualified immunity is applicable to an official's actions is a question of law." *Chappel v. Montgomery County Fire Prot. Dist. No. 1*, 131 F.3d 564, 573 (6th Cir. 1997) (citing *Dickerson v. McClellan*, 101 F.3d 1151, 1157 (6th Cir.1996)).

Defendant moves for summary judgment on the basis of qualified immunity. Before this Court can determine whether he is entitled to qualified immunity, we must first decide whether Plaintiffs state a valid claim pursuant to 42 U.S.C. § 1983. *See Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir. 1997) (court must first determine whether the plaintiff has stated a valid § 1983 claim and then, "if [plaintiff] has stated a claim," examine whether summary judgment is warranted on qualified immunity grounds) (citation omitted). Thus, this Court must conduct a two-part inquiry: (1) whether Plaintiffs have shown a violation of a right protected by the constitution, and if so, (2) whether that right was clearly established such that a reasonable government official would have realized that his challenged actions were in violation of that right. *Sowards v. Loudon County, Tenn.*, 203 F.3d 426, 438 (6th Cir. 2000) (citations omitted).

**II.**

Defendant argues that Plaintiffs have not stated a valid constitutional claim because as deputy sheriffs, Plaintiffs fall under the "confidential" employee or "policymaker" exception to the general rule prohibiting patronage dismissals. Defendant also argues that even if Plaintiffs state a valid claim, he is entitled to qualified immunity because the right of deputy sheriffs in Hopkins County to be protected from patronage dismissals was not clearly established when Defendant decided not to rehire Plaintiffs. Plaintiffs counter that they have stated a valid claim of unconstitutional patronage dismissal as established by Sixth Circuit precedent.

Further, they argue the law regarding the constitutionality of discharging deputy sheriffs for political reasons was clearly established in this circuit before they were fired. We shall address each argument.

The Supreme Court has held that patronage dismissals, or the practice of discharging employees because they in some fashion support a political party other than the one supported by their employers, violate the First and Fourteenth Amendments to the U.S. Constitution. *Elrod v. Burns*, 427 U.S. 347, 359 (1976) (plurality opinion) (threat of dismissal for failure to provide support for a favored political party "inhibits protected belief and association," and dismissal for failure to provide support penalizes the exercise of those rights); *Sowards,* 203 F.3d at 432 (explaining that political association is now a well-established First Amendment right, and "support for a political candidate falls within the scope of the right of political association"). However, a majority of the Supreme Court held that while patronage dismissals "clearly infringe[] First Amendment interests," restraints on First Amendment rights are appropriate in certain instances. *Elrod,* 427 U.S. at 360. The plurality held that such dismissals should be limited to policymaking positions. *Id*. at 372. In his concurrence, Justice Stewart framed the issue another way, stating that a "nonpolicymaking, nonconfidential" government employee performing his or her position in a satisfactory manner cannot be dismissed solely on the grounds of political beliefs. *Id*. at 375 (Stewart, J., concurring); *see also Williams v. City of River Rouge*, 909 F.2d 151, 153 (6th Cir. 1990) (explaining that *Elrod* bans the politically-motivated dismissal of government employees except as to confidential employees holding "policymaking" positions). The reasoning behind the decision in *Elrod* is that such positions may be used to obstruct or undermine a new administration's policies, which presumably have been sanctioned by the electorate. *Elrod,* 427 U.S. at 367; *see also Branti v. Finkel*, 445 U.S. 507, 517 (1980) (where an employee's "political beliefs would interfere with the discharge of his public duties, his First Amendment rights may be required to yield to the State's vital interest in

division, who presumably possessed "more of a policymaking position than one who simply serves process, and he was held entitled to First Amendment protection." *Id*. (citation omitted). Further, like Defendant in this case, the defendant in *Burns* argued that his office was small, which was an important consideration in determining political affiliation. However, the court stated that the small size of the office alone does not make "partisan affiliation a relevant factor." *Id*. at 1022-23. The Third Circuit pointed out that in *Branti* there were only nine assistant public defenders, but the Supreme Court held that they enjoyed First Amendment protection. *Id.*

Defendant urges this Court to adopt the reasoning in cases from other circuits that have held that deputy sheriffs are subject to patronage dismissals. *See e.g.*, *Jenkins v. Medford*, 119 F.3d 1156, 1164 (4th Cir. 1997) (holding that under North Carolina law deputy sheriffs are subject to patronage dismissals); *Upton v. Thompson*, 930 F.2d 1209, 1218 (7th Cir. 1991) ("deputy sheriffs operate with a sufficient level of autonomy and discretionary authority to justify a sheriff's use of political considerations when determining who will serve as deputies"); *Terry v. Cook*, 866 F.2d 373, 377 (11th Cir. 1989) (allowing sheriff to refuse to rehire any deputies from the previous administration as "loyalty to the individual sheriff and the goals and policies he seeks to implement through his office is an appropriate requirement" of the deputy sheriff position); *but see Ruffino v. Sheahan*, 218 F.3d 697, 699, 701 (7th Cir. 2000) (holding that sheriff was not entitled to qualified immunity as disputed issue of material fact existed regarding whether he fired deputy sheriffs, who principally provided courtroom security, for political reasons); *Cutcliffe v. Cochran*, 117 F.3d 1353, 1357 (11th Cir. 1997) (holding that because it was bound by *Terry*, panel could not conduct a factual determination as required by *Branti* to determine whether plaintiffs' positions as deputy sheriffs implicate partisan political concerns; however, recognizing that under *Branti*, political fealty may not be implicated where deputy sheriffs merely investigate crimes, patrol the roads or transport inmates); *Jenkins*, 119 F.3d at 1166 (Motz,

*Soward* liable, at least civilly, for the acts of the jailer. *Sowards,* 203 F.3d at 436. In addition, the sheriff's liability is not unlimited in Kentucky. Indeed, "the office of the sheriff, and not the individual holder thereof" is liable for the deputy's acts. KY. REV. STAT. ANN. § 70.040. Also, if the sheriff discharges the acts of the deputy, the deputy is liable to the sheriff for all damages and costs which are caused by the deputy's acts or omissions. *Id*. Finally, just as the sheriff in *Soward* admitted that the jailer position could be performed without political fealty, Defendant here admitted that Plaintiffs could have performed their jobs suitably for him although they supported his opponent in the election. (J.A. at 76-77.) While "[t]he extent to which a particular job has a policymaking dimension is [of course] relevant," *Branti* instructs that the "ultimate inquiry" rests on "whether the hiring authority can demonstrate that party affiliation [or sponsorship] is an appropriate requirement for the effective performance of the public office involved." *Rice v. Ohio Dep't of Transp.*, 14 F.3d 1133, 1140 (6th Cir. 1994); *see also Hall*, 128 F.3d at 423 (noting that patronage dismissal is justified only where the hiring authority shows that party affiliation is necessary to effectively perform the government position). We believe Defendant has simply failed to make such a showing.

In *Burns*, 971 F.2d 1015, a case factually similar to the one at bar, the Third Circuit addressed and rejected many of the same arguments that Defendant now raises. In that case, the sheriff argued that deputy sheriffs were subject to patronage dismissals because of the duties and loyalty required by the position. *Id*. at 1022. The primary tasks of the deputies included serving process, transporting prisoners and providing security for courtrooms. *Id*. The sheriff argued that he "must be assured of the loyalty and confidentiality of his deputies and he has a strong interest that everyone in his department get along, particularly since the sheriff's office is small." *Id*. The court, however, held that it could not say "as a matter of law that party affiliation would further the effective performance of these tasks." *Id*. It pointed out that in *Elrod*, one of the plaintiffs was the chief deputy of the process

maintaining governmental effectiveness and efficiency"). In *Branti*, assistant county public defenders challenged their dismissals after a new county public defender, who belonged to a different party than his predecessor, took office and discharged or refused to retain most of them. *Id*. at 509-10. The Court held that the employment of an assistant public defender cannot be conditioned on political allegiance, as whatever policymaking occurs in his office "must relate to the needs of the individual clients and not to any partisan political interests." *Id*. at 519. In *Branti* a Court majority reaffirmed that employees who are in policymaking positions or who hold confidential relationships with their employers may be fired for reasons of political affiliation. *Id*. at 517; *Hall v. Tollett*, 128 F.3d 418, 423 (6th Cir. 1997).

The Supreme Court has extended the scope of the protection of politically motivated employment decisions from dismissals to failures to rehire, promote, transfer and recall from layoffs. *Faughender v. City of North Olmsted*, 927 F.2d 909, 912-13 (6th Cir. 1991) (citations omitted). In determining whether a position is afforded protection against politically motivated dismissal or other adverse action, the relevant inquiry is on the "inherent duties of the position in question, not the work actually performed by the person who happens to occupy the office." *Williams*, 909 F.2d at 154 (explaining that the new administration wanted the city attorney to perform his duties in a way that differed from the manner in which the dismissed appellant had performed his duties). The analysis should focus on the inherent duties of the position itself, and the duties that the new holder of the position will perform. *Faughender*, 927 F.2d at 913.

"The plaintiff bears the initial burden of proving that he or she was discharged because of his or her political affiliation."[3] *Hall*, 128 F.3d at 423 (citations omitted). The

---

[3] In the statement of facts section of their respective briefs, the parties dispute whether Defendant's decision not to rehire Plaintiffs was politically motivated. Without much discussion, but after setting forth the standards applicable on a motion for summary judgment, the district court

defendant then must show that the position at issue falls within the exception for policymaking positions, i.e., the *Branti-Elrod* exception. *Id.* To justify a patronage dismissal, the hiring authority ultimately must "demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Id.* (citing *Branti*, 445 U.S. at 518).

## A.

"Whether political affiliation is an appropriate consideration for the employment for a government position is a question of law." *Sowards*, 203 F.3d at 435; *Hall,* 128 F.3d at 427. This Court has set forth a system by which courts can "determine whether political affiliation is an appropriate element of personnel decisions . . . [by creating] four categories which attempt to capture the positions that

---

"assume[d]" for purposes of the instant motion that Plaintiffs were dismissed for supporting Lee's opponent in the 1998 sheriff's election. (J.A. at 88, 89.) On an appeal from a denial of qualified immunity, this Court lacks jurisdiction to entertain the appeal insofar as the district court's order determines whether the pretrial record sets forth genuine issues of material fact for trial. *Johnson v. Jones*, 515 U.S. 304, 307 (1995) (holding that on appeal from denial of summary judgment, appeals court lacked jurisdiction to consider factually disputed issues related to district court order); *Claybrook v. Birchwell*, 274 F.3d 1098, 1102-03 (6th Cir. 2000) (explaining that disputed factual issues pertaining to material issue of whether force used in § 1983 case was excessive precluded grant of summary judgment on grounds of qualified immunity); *Ruffino v. Sheahan*, 218 F.3d 697, 701 (7th Cir. 2000) (holding that court lacked jurisdiction to consider whether sheriff was entitled to qualified immunity on grounds that he discharged deputy sheriffs because of a corruption probe, as disputed factual issues existed as to whether plaintiffs in fact were discharged instead for political reasons)*; McCloud*, 97 F.3d at 1544-45 (explaining that the question of defendant's purpose in firing the plaintiffs is a question of intent, which the court was without jurisdiction to consider on summary judgment motion pertaining to denial of qualified immunity). Apparently because of the factual disputes over Defendant's motivation for not rehiring Plaintiffs, the parties do not address in the argument section of their briefs whether Defendant's decision not to rehire Plaintiff was politically motivated, but rather, as explained above, focus on purely legal arguments.

---

duties that the new holder of the position will perform). Similar to Plaintiffs in this case, the plaintiff in *Hall* also autonomously patrolled the roads, enforced all state laws, and responded to crisis situations, which presumably included everything from automobile accidents to murder investigations. Certainly, carrying out these tasks required the plaintiff to exercise a certain amount of discretion. However, just as we found that the deputy sheriff in *Hall* was protected from patronage dismissals, we believe the district court correctly concluded that based on the current record Plaintiffs in the instant case should be afforded such protection. In both cases, the deputy sheriff positions involve the same type of nonpolicymaking duties. The fact that Hopkins County deputy sheriffs also served process, acted as courtroom bailiffs, and transported prisoners does not mean their duties were significantly different from those of the plaintiff in *Hall* or that they were policymakers. *See e.g., Burns v. County of Cabria, Penn.*, 971 F.2d 1015, 1022 (3d Cir. 1992) (holding that deputy sheriffs who performed these exact functions in a small sheriff's department were protected from patronage dismissals).

While Plaintiffs enjoyed some discretion to perform their duties, the jailer in *Sowards* did as well. However, this Court determined in that case that such discretion did not automatically turn the position into a policymaking position. *Sowards*, 203 F.3d at 437 (discussing plaintiff's duties and determining whether they required involvement in political or policy decision making); *see also Hall*, 128 F.3d at 427 ("case-by-case nature of the test established in *Branti* requires courts to look at the responsibilities and duties of each position") (citation omitted). Considering the duties of the deputy sheriffs at issue in this case, we cannot as a matter of law hold that the duties of these deputies place them in category one, precluding them from First Amendment protection. *See Burns*, 971 F.2d at 1022 (holding that court cannot as a matter of law state that party affiliation would further the effective performances of the sheriff and the deputies). Further, although Defendant points out that the sheriff is liable for a deputy's acts, so too was the sheriff in

436.   Pursuant to the statute, a jailer had discretion to determine the type of precautions to take for guarding against escape, preventing the importation of drugs, and admitting people who had business with the prisoners. *Id*. The defendants argued that the plaintiff's position fell within categories two or three under *McCloud*. They argued that her "statutory duties require[d] discretion in the day-to-day operation of the jail and [could] have serious consequences with respect to the safety of the prisoners and the public." *Id*. She had discretion to determine whether inmates needed medical treatment or were suicidal or whether altercations were likely to occur among the prisoners. *Id*. Further, she often operated without "direct supervision." *Id*. Moreover, pursuant to Tennessee law, a sheriff incurred civil liability for the jailer's acts. *Id*. Thus, the defendants argued, she could have violated the civil rights of prisoners or the public or otherwise engaged in conduct that "could have [had] serious political and legal implications for the sheriff." *Id*. Despite this statutory language, this Court held that the jailer's position did not fall under the *Branti-Elrod* exception to patronage dismissals. The defendants admitted that the jailer's position did not "involve any policymaking for the day-to-day operation of the prison, and that the jailer was not in a confidential relationship with the sheriff regarding how to run the facility." *Id*. at 437. Further, both the sheriff and the chief jailer agreed that the jailer position did not require political loyalty to the sheriff. *Id*. Moreover, although the sheriff was liable for jailer's acts, we held that this fact was not sufficient to characterize the jailer as the sheriff's "alter ego." *Id*. at 438.

In the instant case, Heggen and Lee's duties comprised road patrol, serving arrest warrants and civil papers, taking complaints, "working" auto accidents, and transporting prisoners. Similarly, Pendergraff served primarily as a courtroom bailiff. Lee has not stated that he has changed the duties of deputy sheriffs currently working for him or that he intends to do so. *Faughender*, 927 F.2d at 913 (in analyzing whether a position is subject to patronage dismissal, focus should be on the inherent duties of the position itself, and the

could possibly fall into the *Branti* exception . . . ." *Id.* at 424. The categories are as follows:

1.   positions specifically named in relevant federal, state, county, or municipal law to which discretionary authority with respect to the enforcement of that law or the carrying out of some other policy of political concern is granted;

2.   positions to which a significant portion of the total discretionary authority available to category one position-holders has been delegated; or positions not named in law, possessing by virtue of the jurisdiction's pattern or practice the same quantum or type of discretionary authority commonly held by category one positions in other jurisdictions;

3.   confidential advisors who spend a significant portion of their time on the job advising category one or category two position-holders on how to exercise their statutory or delegated policymaking authority, or other confidential employees who control the lines of communications to category one positions, category two positions or confidential advisors;

and

4.   positions that are part of a group of positions filled by balancing out political party representation, or that are filled by balancing out selections made by different governmental agents or bodies.

*McCloud*, 97 F.3d at 1557. If an employee's position falls within one of these categories, then that person's position falls within the *Branti* exception allowing for patronage dismissals. *Hall*, 128 F.3d at 424. Thus, such an employee may be dismissed for reasons related to political affiliation without infringing his or her constitutional rights. *Id*.

This Court has had occasion to determine whether a deputy sheriff's position falls within the *Branti* exception. In *Hall*,

based on the record before us, this Court determined that a deputy sheriff's position did not fall within the exception to the proscription of patronage dismissals carved out by such cases as *Elrod* and *Branti*. *Hall*, 128 F.3d at 427-29. The Court held that the plaintiff had produced sufficient evidence to raise a genuine issue of material fact that the sheriff knew of the deputy sheriff's political affiliation, that the deputy sheriff supported the sheriff's opponent, and that he was fired for those reasons. *Id*. at 427. The court next considered whether the position of deputy sheriff fell within the patronage dismissal exception. *Id*. In finding that it did not, the Court stated that the record showed that the deputy's primary duties included patrolling the roads of the county, enforcing the laws of the county and the state, carrying firearms, and responding to crisis situations. *Id*.

Defendant argues that this case is distinguishable from *Hall* because unlike Tennessee sheriffs, Kentucky deputy sheriffs possess the type of discretionary functions that permit them to be fired for patronage reasons. Further, Defendant argues that when he took office he had only ten deputies; thus, his office was small. He contends that the need for mutual trust and confidence is particularly important in smaller offices and supports the conclusion that political considerations matter. *See e.g. Upton v. Thompson*, 930 F.2d 1209, 1215 (7th Cir. 1991) ("[p]articularly in a small department, a Sheriff's core group of advisers will likely include his deputies").

To support his first argument, Defendant points to several Kentucky statutes, which he claims grant deputy sheriffs broad decision-making authority. For instance, the sheriff may appoint deputies and revoke the appointments at his pleasure. KY. REV. STAT. ANN. § 70.030(1) (Banks-Baldwin 2000). Under the direction of the sheriff, a deputy sheriff may transport prisoners and keep order in the courts. *Id*. at §§ 70.130, 70.140. A sheriff and his deputies also have authority to control the roads of the county. *Id*. at § 70.150. Defendant also claims the deputy sheriff position falls within the first category outlined in *McCloud* because of the authority deputies possess when investigating serious traffic

accidents, such as taking affidavits from witnesses and serving subpoenas upon such witnesses. KY. REV. STAT. ANN § 70.150(3). Further, the sheriff's office may also be responsible for all acts or omissions of each deputy. § 70.040.[4]

In *McCloud*, this Court held that category one captures such positions as a chief executive's cabinet secretaries and similar employees. *McCloud*, 97 F.3d at 1557 n.30. We explained that the policymaking authority of such an employee must be held in relation to a matter of political concern. *Id*. For instance, a "football coach" is a policymaker, but not the sort of policymaker for whom political affiliation is an appropriate requirement under the First Amendment. *Id*. (citation omitted). We offered as an example of a category one position, "a secretary of state given statutory authority over various state corporation law policies." *Id*. at 1557. Although the statutory provisions cited by Defendant may grant deputy sheriffs authority and/or discretion to serve process and take affidavits and otherwise perform certain duties, such discretion does not place them into category one. As discussed below, merely because a statute grants certain discretionary authority to perform various duties does not mean that the individual holding that position is not afforded First Amendment protection against patronage dismissals.

In *Sowards*, this Court determined that a jailer, who had been fired for allegedly supporting the sheriff's opponent in an election, was protected by the First Amendment although under Tennessee statutory law, a jailer was afforded ample discretion in carrying out her duties. *Sowards,* 203 F.3d at

---

[4]Plaintiffs argue that a comparison of the statutory authority of Kentucky law and Tennessee law reveals no meaningful difference. Although differences certainly exist between the statutory authority granted to deputy sheriffs in both states, we agree that Tennessee deputy sheriffs also are granted broad authority to perform their duties. For instance, under Tennessee law, a deputy may "summon the body of the county to their aid, in order to keep the peace, prevent crime . . . or to execute process of law." TENN. CODE ANN. § 8-8-213 (1993).