**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 06a0555n.06**
**Filed: August 3, 2006**

**Nos. 05-5142, 05-5143**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| SYLVIA NAILS, | ) | |
| | ) | |
| Plaintiff-Appellant Cross-Appellee | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| DALE RIGGS, | ) | WESTERN DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellee Cross-Appellant | ) | |
| | ) | |
| CITY OF VINE GROVE, KENTUCKY , | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

Before: NORRIS, SUHRHEINRICH, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge. This case involves whether there was probable cause to arrest Ms. Nails for disorderly conduct after a forceful disagreement between Nails and Police Chief Riggs, and whether excessive force was used against her. The district court took every possible step within its discretion to permit Nails to seek redress, including permitting her to amend her complaint and submit additional evidence after initially losing on summary judgment. The district court granted summary judgment on various federal and state claims on the ground that there was probable cause for her arrest. Nails' excessive force claim went to the jury, which found for the defendant. While a jury could conclude that there was no probable cause to arrest Nails, qualified immunity nonetheless protects defendant Riggs from a constitutional claim for arrest without probable cause,

and insufficient evidence supports a constitutional claim against the city. The judgment on the jury verdict regarding excessive force was proper. We therefore affirm the judgment on all federal claims, but remand some of the state law claims for further consideration.

## I. Background

Ms. Sylvia Nails was in a hurry to take her son to a pediatrician for a 10:00 a.m. appointment. It was 9:40 a.m. on June 8, 2001 and Nails' son needed to be at the doctor in 20 minutes. Mr. Nails was not overly concerned about the pediatrician's appointment; he wanted to find the garage door opener. Mr. and Ms. Nails fought over the location of the garage door opener. Mr. Nails thought that Ms. Nails might have it in her car. Mr. Nails took Ms. Nails' keys to look in her car and Ms. Nails called the police. She wanted help retrieving the keys from her husband.

Chief Riggs arrived at the scene in response to Nails' request. Riggs negotiated with Mr. Nails for return of the car keys. Ms. Nails approached Riggs and her husband as they talked in the front lawn of Mr. Nails' home. Ms. Nails asked for her car keys. According to Ms. Nails' deposition, she did not yell or gesticulate wildly. She merely "talked" to Riggs and put her hand up towards her own body six inches from her own face, making a talk-to-the-hand gesture. Ms. Nails was upset because Riggs "disrespected" her, but Nails claims she was not being violent or noisy at all.

According to Chief Riggs, he arrived at the Nails residence responding to a domestic disturbance and an assault call. Riggs stated that Nails was "screaming, shouting different things

about some car keys." She would not go back inside the house despite three requests. Riggs wanted to talk to Mr. Nails without Ms. Nails' presence. Ms. Nails did not go back in the house and Riggs claims she said, "I want my f[***]in' car keys" to her husband as she reached towards him. Riggs testified that Ms. Nails also said, "Now hit me. The police [are] here, now hit me," to her husband. Nails denies she said any of these things. Riggs then "advised her she was under arrest."

According to Ms. Nails, Riggs displayed racial animus before and after the arrest. After Riggs forcefully arrested Nails, Riggs told her, "I'm teaching you how to shut up." Nails also alleges that Riggs (who is white) displayed racial animus towards Ms. Nails and her family (who are black). Riggs allegedly told Nails to, "[s]hut [her] damn mouth and get [her] black ass back in the house."

Riggs arrested Nails for disorderly conduct. He said that her "statements and demeanor at the scene" were "disorderly." He also said she was in a public place –"her front yard." Riggs did not know if there were other people at the scene. According to Nails' deposition her husband was on the front lawn and her children were standing on the porch. Thus, there was only one other person at the scene.

Nails and Riggs' stories diverge on the amount of force used in the arrest. Riggs claims that Nails was not in visible pain and faked a seizure when arrested. Nails claims she was knocked unconscious after being slammed into a car. In Nails' version of the arrest she appeared to be

unconscious almost immediately upon being arrested. Nails claims that she sustained various neck and back injuries for which she received medical treatment.

Nails was arrested and charged with disorderly conduct and resisting arrest. Riggs was the charging officer. The charges were dismissed on November 28, 2001, and the statute of limitations expired on June 8, 2002.

Nails then instituted this action, pro se, on June 7, 2002. Nails listed "Jefferson Co. Corrections Official Chief Riggs" as the defendant. Riggs answered the complaint denying the allegations and asserted the defense of qualified immunity. After retaining counsel, Nails amended her complaint on March 18, 2003, to state claims against Chief Riggs in his individual capacity and the City of Vine Grove. Riggs and Vine Grove moved to dismiss the allegations in the amended complaint on the ground that they were barred by the statute of limitations because the amended complaint did not relate back to the filing of the initial complaint. The district court ruled that the amendments do relate back because Riggs was on notice that he was being sued in his individual capacity.

The amended complaint alleges various state law and constitutional torts. Nails alleged state law torts against Riggs in his individual capacity including false arrest, misuse of legal process and assault. Nails also alleged the Riggs violated her clearly established constitutional rights under the Fourth Amendment in violation of 42 U.S.C. § 1983. Lastly, Nails alleged that the City of Vine Grove was liable for the constitutional torts committed based on a failure to train theory.

In an order dated June 18, 2004 the district court dismissed all of Nails' claims pursuant to a motion for summary judgment. The district court dismissed all claims under § 1983 on the ground that Nails did not provide evidence of damages. Lastly, the June 18 order dismissed all the state law tort claims because there was probable cause to arrest Nails for disorderly conduct as a matter of law. Nails then submitted additional evidence, medical records, which tended to show she was injured. Nails then moved for reconsideration of the district court's order granting summary judgment to the defendants pursuant to a motion under Federal Rules of Civil Procedure 59(e). The district court granted the motion, in part, by reviving Nails' claim that Riggs used excessive force when arresting her for disorderly conduct. The district court ruled that Riggs was not entitled to qualified immunity and the excessive force claim went to trial. Nails presented evidence that she did not resist Riggs at all. Riggs presented evidence that Nails was behaving erratically and that he used the minimum necessary amount of force to subdue Nails.

Nails objected to the jury instructions that stated the arrest was lawful. The jury instruction given stated that every person has a "constitutional right not to be subjected to unreasonable or excessive force while being arrested, even though the arrest is otherwise made in accordance with the law." The jury instructions further noted that, as "a law enforcement officer making a lawful arrest," Riggs had "a right to use an amount of force reasonably necessary under the circumstances to complete the arrest." The instructions finally stated, "I have already ruled that [Chief Riggs] did have probable cause. However, you may consider the circumstances of the arrest as part of your assessment of the force necessary to effectuate the arrest." The jury decided in favor of Riggs.

Nails filed her timely notice of appeal on January 13, 2005. Riggs has filed a cross appeal.

## II. Standard of review

Claims dismissed on summary judgment are reviewed de novo. *Heggen v. Lee*, 284 F.3d 675, 679 (6th Cir. 2002). The district court ruled, at the summary judgment stage, that there was probable cause to arrest as a matter of law. Thus, the probable cause determination is reviewed de novo. Summary judgment is appropriate when there is no genuine issue of material fact; all evidence is considered in the light most favorable to Nails. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

As long as reasonable jurors can disagree about material facts and circumstances facing the officer, probable cause is a question of fact for the jury. *Hale v. Kart*, 396 F.3d 721, 728 (6th Cir. 2005). Of course, when no material issue of fact exists, probable cause determinations are legal determinations. *Id.*

The district court's decision to grant a Federal Rules of Civil Procedure 59(e) motion to amend is reviewed for abuse of discretion. *Hansmann v. Fid. Invs. Institutional Servs. Co.*, 326 F.3d 760, 766-67 (6th Cir. 2003).

### III.  Statute of Limitations

At the outset, we conclude that Nails' claim is not barred by the statute of limitations.  The statute of limitations question is close, but the district court correctly reasoned that Nails' amended complaint can relate back to her timely filed original complaint.  By asserting the defense of qualified immunity, Riggs showed that he knew he was being sued in his individual capacity.  *See Moore v. City of Harriman*, 272 F.3d 769, 772-74 (6th Cir. 2001) (en banc).  Riggs claims that he did not assert the defense of qualified immunity, but his answer reveals that he did.  Thus, the district court did not abuse its discretion when it permitted Nails to relate back the amendment adding claims against Riggs in his individual capacity.

All parties agree that the proper statute of limitations period is one year from the date of injury.  Thus, the statute of limitations ran on June 8, 2002 (one year after the arrest on June 8, 2001).  Nails filed her original complaint on June 7, 2002.  On its face, the 2002 complaint asserted a claim only against Riggs in his official capacity.  Nails filed her amended complaint on March 18, 2003.  Thus, unless the amendment relates back to the original complaint, Nails' complaint against Riggs in his individual capacity is barred by the statute of limitations.  Because the "course of proceedings" test shows that  the original complaint provided actual notice that Nails intended to sue Riggs in his individual capacity, it was not an abuse of discretion to relate back the amended complaint.

Because the claim asserted against Riggs in his individual capacity arose out of the same circumstances as the claim against Riggs in his official capacity and Riggs was not prejudiced by being added, the first two elements are met. Under Federal Rules of Civil Procedure 15(c)(2), a change in party relates back to the original complaint if the claim asserted against the new party arose out of the same transaction and occurrence. It did. Additionally, it is undisputed that Officer Riggs was on notice within 120 days as required by the Federal Rules of Civil Procedure 15(c)(3). The second element of relation back is met because adding Riggs in his individual capacity does not prejudice his defense. Riggs knew that he could face some liability for the improper conduct when the initial complaint was filed. There is little, if any, prejudice from adding Riggs in his individual capacity for § 1983 purposes because Riggs retained counsel early in the proceedings. *See* Fed. R. Civ. P. 15(c)(2).

Riggs "[knew] or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against [him in his individual capacity]." Fed. R. Civ. P. 15(c)(3). The district court correctly applied the "course of proceedings" test from *Moore*, 272 F.3d at 772-74. The "course of proceedings" test determines whether § 1983 defendants "have received notice of the plaintiff's intent to hold them personally liable." *Id*. at 772. "The 'course of proceedings' test considers such factors as the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint, particularly claims of qualified immunity, to determine whether the defendant had actual knowledge of the potential for individual liability. The test also considers whether subsequent

pleadings put the defendant on notice of the capacity in which he or she is sued." *Id.* at 772 n.1 (internal citations omitted).

Riggs' counsel asserted the defense of qualified immunity and thus Riggs was on notice that he was being sued in his individual capacity. The third defense asserted was, "[a]t all times mentioned in Plaintiff's Complaint, the Answering Defendant acted in good faith, without malice and within the scope of his duties as a public official." Asserting the defense of qualified immunity can be seen as an admission that the § 1983 defendant knows she is being sued in his individual capacity. *See Rodgers v. Banks*, 344 F.3d 587, 594 (6th Cir. 2003). The district court interpreted the answer as asserting qualified immunity, even though the answer does not use magic words like "qualified immunity" or "clearly established constitutional right." In Kentucky, the defense of qualified immunity is commonly referred to as the "'good faith' qualification to official immunity for discretionary acts." *Yanero v. Davis*, 65 S.W.3d 510, 523 (Ky. 2001). Arguing that a public official acted in good faith within the scope of his duties as a public official is tantamount to pleading qualified immunity in Kentucky. *See id.* Applying *Moore*, because Riggs asserted qualified immunity he knew he was being sued in his individual capacity and the amendment should relate back. Thus, the district court did not abuse its discretion by permitting Nails to relate her amended complaint back to the date of her original pro se complaint.

**IV. Probable cause and qualified immunity**

Because Riggs, in his individual capacity, asserted qualified immunity we apply the familiar test of *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (instructing lower courts to consider the threshold issue of whether a constitutional right was violated in addition to whether the right at issue was clearly established). While we disagree with the district court's decision that there was probable cause to arrest under Kentucky's disorderly conduct statute, Kentucky cases are not sufficiently clear that Riggs actions violated clearly established law. Thus, Riggs is entitled to qualified immunity.

**A. Constitutional Violation**

A reasonable jury could find the facts supporting a constitutional violation for an illegal arrest. A material issue of fact remains that, if construed in Nails' favor, would permit the conclusion that Riggs did not have probable cause. Construed in the light most favorable to Nails, no reasonable officer in Riggs position could have concluded that Nails engaged in conduct defined as "disorderly" under the statute. Also, there was no probable cause to arrest Nails for disorderly conduct because a jury could find that Nails was neither in a public place nor might create risk of public disturbance. Additionally, because it is undisputed that Nails did not threaten use of force or create risk of harm to Chief Riggs after she was placed under arrest, no reasonable officer in Riggs' position could believe that Nails resisted arrest.

Nails' disagreement with Officer Riggs on her own front lawn is the type of behavior the drafters of Kentucky Revised Statutes 525.060 sought to exclude from the definition of disorderly conduct. "Where the state supreme court has not spoken, our task is to discern, from all available

sources, how that court would respond if confronted with the issue." *Rector v. Gen. Motors Corp.*,

963 F.2d 144, 146 (6th Cir. 1992). The facts taken in Nails' favor permit a finding that it was

unreasonable for Officer Riggs to believe Nails engaged in disorderly conduct. *See Beck v. Ohio*,

379 U.S. 89, 91-92 (1964) (stating the probable cause standard as whether the facts and

circumstances were sufficient to warrant a prudent person in believing the arrestee had committed

an offense).

Generally, disorderly conduct criminalizes wantonly creating risk of public annoyance or

alarm. Kentucky Revised Statutes Chapter 525.060 defines disorderly conduct as follows:

> (1) A person is guilty of disorderly conduct when in a public place and with intent
> to cause public inconvenience, annoyance or alarm, or wantonly creating a risk
> thereof, he:
>
> > (a)    Engages in fighting or in violent, tumultuous or threatening behavior;
> > or
> >
> > (b)    Makes unreasonable noise; or
> >
> > (c)    Refuses to obey an official order to disperse issued to maintain public
> > safety in dangerous proximity to a fire, hazard or other emergency;
> > or
> >
> > (d)    Creates a hazardous or physically offensive condition by any act that
> > serves no legitimate purpose.

There is a jury question as to whether a prudent officer in Riggs' position could believe that

Nails committed a "disorderly" act listed in Ky. Rev. Stat. 525.060(1)(a-d) by gesticulating

erratically and yelling at Riggs. A jury could conclude that Nails' conduct is not "threatening

behavior," in violation of Ky. Rev. Stat. 525.060(1)(a), because Nails said she was not violent, did

not threaten anyone, and only held her hand up six inches from her own face. A jury could conclude that Nails did not make "unreasonable noise," in violation of Ky. Rev. Stat. 525.060(1)(b) because Nails said she did not make any more noise than asking (in a non-yelling voice) for her car keys. *Cf. Commonwealth v. Jones*, 880 S.W.2d 544, 545-46 (Ky. 1994) (upholding conviction under the disorderly conduct statute where officer testified to defendant's volume of speech). It is undisputed that there was no emergency on the order of a fire or hazard. *See* Ky. Rev. Stat. 525.060(1)(c). Taking the facts in the light most favorable to Nails, a rational juror could conclude that asking for one's keys is not a "hazardous or physically offensive condition," and that asking for car keys to take a child to a doctor is a "legitimate purpose." Ky. Rev. Stat. 525.060(1)(d); *cf. also Jones*, 880 S.W.2d at 546.

Additionally, a jury could reasonably conclude that Nails' conduct does not satisfy the public alarm element of Ky. Rev. Stat. 525.060.

*1. A jury could reasonably conclude that Nails did not wantonly create risk of public alarm.*

A jury could reasonably conclude that the facts known to Riggs did not support an inference that Nails' conduct created a risk of public alarm. A jury could reasonably conclude that the only person who was alarmed by Nails' conduct was Chief Riggs. Causing alarm only to a police officer cannot form the basis of an arrest for disorderly conduct.

> [T]he statute requires public alarm as distinguished from private alarm. *For example, a person may not be arrested for disorderly conduct as a result of activity which annoys only the police.* The statute is not intended to cover the situation in which a

>  private citizen engages in argument with the police so long as the argument proceeds without offensively coarse language or conduct which intentionally or wantonly creates a risk of public disturbance.

Ky. Rev. Stat. § 525.060 cmt. (emphasis added).[1]  Applying the comments, a jury could reasonably conclude no prudent person in Chief Riggs' position could believe that Nails behavior amounted to disorderly conduct because Nails' conduct created a risk of annoying only Riggs.

A review of the one Kentucky case where a domestic dispute on a front lawn created risk of public alarm permits the conclusion that a jury could reasonably conclude that there was no risk of public alarm in this case.  Unlike this case, in *Collins v. Commonwealth*, No. 2002-CA-001991-MR, 2004 WL 315035, at * 1  (Ky. Ct. App. Feb. 20, 2004), the court of appeals affirmed a conviction for disorderly conduct where a domestic dispute, including boisterous noise, risked annoying neighbors because it was 2:00 a.m. in a trailer park.  The *Collins* Court described the scene as,

>  after calling the police, appellant demanded that his girlfriend be removed from his trailer. While the officer and appellant's girlfriend stood outside the trailer waiting for the girlfriend's friend to take her home, appellant came out of the trailer and yelled and cursed at his girlfriend to leave the premises.  The officer twice ordered appellant inside and warned him that if he came back outside yelling and cursing, he would be arrested for disorderly conduct. When appellant emerged a third time, the officer informed him he was under arrest.

Even if the arrestee was not in a public place (a front lawn), the disorderly conduct was boisterous noise at 2:00 a.m. in a trailer park that had a chance of "producing its offensive or proscribed

---

[1]The comments are not binding, but pursuant to Ky. Rev. Stat. 500.100 and *Williams v. Commonwealth*, 639 S.W.2d 786, 788 (Ky. Ct. App. 1982), comments may be used as an aid in construing statutes.

consequences in a public place." Ky. Rev. Stat. 252.010(3); *see Collins*, 2004 WL 315035 at * 1.

*Collins* and the instant case are different because other trailers appeared to be in closer proximity

than the houses in the instant case, it was after 2:00 a.m. rather than 10:00 a.m. in the instant case,

and there may have been one fewer person on the scene in the instant case. *Id.* A prudent officer

is entitled to believe that boisterous noise may cause public alarm in a crowded trailer park at 2:00

a.m., but a jury could conclude such a conclusion cannot be warranted in Nails' case where evidence

shows neighbors were not alarmed. For example, evidence shows the next door neighbor was on

his porch smoking a cigarette. Although *Collins* found that boisterous noisemaking in the wee hours

of the morning in the front yard of a trailer created risk of public annoyance, it is distinguishable

from the instant case because evidence supports a finding that Nails' neighbors were not annoyed

and it was 10:00 a.m.

*2. A jury could reasonably conclude Nails was not in a public place.*

A jury could conclude Nails was not in a public place because she was on her front lawn with

her family watching from the porch. Riggs argues throughout his brief that Nails was in her front

yard and was therefore in a public place, but such an assertion is incorrect as a matter of law. The

commentary describes the types of places that are generally "public places."

> Under the provision, the actor must either intend to cause public inconvenience,
> annoyance or alarm or wantonly create a risk thereof. The statute is not a strict
> liability offense. Ky. Rev. Stat. 525.060 requires 'public' alarm. Public is defined
> in Ky. Rev. Stat. 525.010(2) as that which affects or is likely to affect a substantial
> group of persons. Of course, the public inconvenience, annoyance or alarm can
> occur in privately owned facilities such as stores, apartment houses and theaters.
> This is made clear by the definition of 'public place' in Ky. Rev. Stat. 525.01(3).

> The provision is not intended to include conduct which disturbs the peace and quiet
> of any 'one' person.

Ky. Rev. Stat. 525.060 cmt. The commentary illustrates that a short disagreement in the late morning on a private front lawn is probably not the type of place that could qualify as a public place by virtue of producing its proscribed consequences in a public place.

The plain language of the statute suggests that a private front yard is not a public place. Statutory examples of public places include, but are not limited to, "highways, transportation facilities, schools, places of amusements, parks, places of business, playgrounds, and hallways, lobbies and other portions of apartment houses and hotels not constituting rooms or apartments designed for actual residence." Ky. Rev. Stat. 525.010(3). A private front lawn with two people and a police officer is not explicitly excluded by Ky. Rev. Stat. 525.010(3)'s definition of public place because boisterous noise at 2:00 a.m. might create risk of public annoyance. *See Collins*, 2004 WL 315035, at * 1. Riggs' rationale, that Nails was in her front yard and was therefore in a public place, is not supported by a plain reading of the statute. Unlike the public places listed in Ky. Rev. Stat. 525.010(3), a private front yard is the type of private property where the public is generally *excluded* and thus a jury could conclude it was unreasonable for Riggs to believe that Nails' front lawn is a "public place" "to which the pubic . . . . has access." *Id.*

A judge of the Kentucky court of appeals stated that a "front porch . . . is arguably not a public place within the meaning of Ky. Rev. Stat. 525.060." *Szelag v. City Of Louisville*, No. 2002-CA-001276-MR, 2003 WL 22976420, at *4 (Ky. Ct. App. Dec. 19, 2003) (Knopf, J. concurring). Thus, there is support to the proposition that a jury could conclude that there is no

- 15 -

probable cause to arrest a citizen for disorderly conduct who is having a forceful disagreement, on a front porch or yard, on private residential property. Applying the statute, commentary to the statute, and relevant Kentucky case law, we determine that a jury could conclude Nails did not create risk of public alarm. Thus, a jury could reasonably conclude Officer Riggs did not have probable cause to arrest Nails for disorderly conduct.[2]

**B. Not clearly established.**

Despite the fact that a reasonable jury could find that there was a constitutional violation, the district court was nonetheless warranted in dismissing Nails' federal claims because the illegality of the arrest was not clearly established. *See Saucier*, 533 U.S. at 201. Qualified immunity is warranted when an officer could reasonably believe that probable cause existed to arrest Nails. *See Hunter v. Bryant*, 502 U.S. 224, 228 (1991); *see also Greene v. Reeves*, 80 F.3d 1101, 1107 (6th Cir. 1996) (qualified immunity granted in favor of officers where probable cause was a close question). Stated differently, "[e]ven law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." *Hunter*, 502 U.S. at 227 (citation omitted). In *Hunter*, Mr. Bryant filed a *Bivens* action against two secret service agents who arrested him for making threats on the President's life when he delivered a letter that stated "Mr. Image" was going to kill the President. *Id.* at 225. The Supreme Court reasoned that even if the Mr. Image-letter did not constitute probable cause, the agents were entitled to qualified immunity because it was

---

[2]Riggs does not contend on appeal that Nails "resisted arrest" as defined in Ky. Rev. Stat. 520.090.

reasonable to believe there was. *Id.* at 228-29. Though the specter of Presidential assassination is not involved in this case, the Kentucky statute can at least reasonably be read to prohibit a vociferous outdoor argument coupled with Nails' refusal to comply with Riggs' multiple attempts to defuse a heated situation. Because of the sparse case law it was not objectively unreasonable for Riggs to believe that there was probable cause, and he is therefore entitled to qualified immunity.

The fact that the distinguished Chief Judge of the Western District of Kentucky held that there *was* probable cause lends support to the conclusion that an objectively reasonable police officer could come to the same conclusion.[3] *See Hunter*, 502 U.S. at 228. The district court relied on the uncontroverted fact that Riggs repeatedly told Nails to return to the house while Riggs talked with the husband, and Nails refused to do so. The Kentucky case law is very sparse, and inferences need to be drawn to determine how the Kentucky courts would apply the statute in this case. We therefore affirm the district court's dismissal of Nails' federal no-probable-cause claims on the alternative ground of qualified immunity.

## V. Constitutional claim against the City of Vine Grove

The federal claim against the city was also properly dismissed. While Nails alleges that the City is liable because it "failed to train and supervise" Riggs, this assertion is not supported by any evidence. Because Nails makes only unsupported allegations, her § 1983 claims against the City

---

[3]Like the district court, we do not condone Chief Riggs' actions.

cannot survive summary judgment. There is no evidence on the record of a municipal policy or custom that was the driving force behind alleged constitutional violations.

There is no evidence of failure to supervise. A municipal policy or custom might include a failure to respond to repeated constitutional violations against Riggs, but no such evidence is on the record. *See Brown v. Shaner*, 172 F.3d 927, 930-31 (6th Cir. 1999). Evidence submitted by Riggs shows that Riggs has had no similar complaints of alleged misconduct. This evidence is not refuted. Thus, Nails has not created a material issue of fact as to whether the city's failure to respond to complaints against Riggs amounted to failure to supervise in violation of Nails' constitutional rights.

There is no evidence on the record which supports Nails' claim that Vine Grove failed to train Riggs. A city's failure to train may be the basis for § 1983 liability. *City of Canton v. Harris*, 489 U.S. 378, 380, 386-392 (1989). Evidence on the record shows that Riggs received a standard number of training hours. Nails submits no evidence that the training offered was deficient at all, much less that it reached the level of constitutional deficiency required by *City of Canton*. *See* 489 U.S. at 390-91 (stating that a plaintiff must prove that such inadequate training can justifiably be said to represent "city policy" and that "the deficiency in training actually caused the police officers' indifference"). Because Nails provides no evidence from which a jury could conclude that the City of Vine Grove did not adequately train Riggs or that such inadequate training actually caused her injury, she does not create a material issue of fact which could survive summary judgment.

Thus, the district court properly dismissed Nails' § 1983 claims against Riggs in his official capacity and the City of Vine Grove.

## VI. State law claims

The district court dismissed Nails' state law claims of false arrest, false imprisonment, and malicious prosecution on the ground that lack of probable cause was a necessary element of each tort. We have determined above, however, that a jury could find lack of probable cause under Kentucky statute. Our analysis above precludes liability under the remaining § 1983 claims in this case, but does not necessarily control the resolution of the state law claims.[4] We remand these claims to the district court for further consideration in light of this opinion. Issues of state law official and municipal immunity are better addressed by the district court in the first instance. We also leave to the district court to determine whether it is proper to exercise its discretion at this point to dismiss the state law claims without prejudice, now that no federal law claims remain and there is no diversity of citizenship. "Whether pendent jurisdiction has been properly assumed is one which remains open throughout the litigation." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 727 (1966); *see also City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (under supplemental jurisdiction statute the federal courts decide whether to exercise supplemental jurisdiction "at every stage of the litigation").

---

[4]Nails waived her claim that the district court incorrectly dismissed her assault claim against Chief Riggs because she did not actually make any argument in the body of her brief. The only mention of the assault claim is in a heading. Merely putting an argument in a heading does not preserve that argument for appeal. *See Buziashvili v. Inman*, 106 F.3d 709, 719 (6th Cir. 1997) (stating "[a]lthough defendants listed this as an issue, they make no argument in their brief in support of this contention. Therefore, we consider the argument waived.").

In heading one Nails argues, "The district court erred in granting summary judgment to defendant Dale Riggs on Mrs. Nails' claim of assault . . . because there existed a genuine issue of material fact." Nails does not develop this argument at all in the brief. Thus, under *Buziashvili*, it is waived.

**VII. Motion for a new trial on the § 1983 excessive force claim**

The excessive force claim was properly determined against Nails following a jury trial.[5] Nails claims that the jury verdict in favor of Riggs should be thrown out due to improper jury instructions. In reviewing jury instructions, we must determine if the erroneous jury instructions, viewed as a whole, were misleading. *See Sutkiewicz v. Monroe County Sheriff*, 110 F.3d 352, 361 (6th Cir. 1997). Nails objected to the jury instructions. Whether the jury instructions correctly informed the jury of relevant law is reviewed de novo. *Gibson v. City of Louisville*, 336 F.3d 511, 512 (6th Cir. 2003).

The jury instruction given stated that every person has a "constitutional right not to be subjected to unreasonable or excessive force while being arrested, even thought the arrest is otherwise made in accordance with the law." The jury instructions further noted that, as "a law enforcement officer making a lawful arrest," Riggs had "a right to use an amount of force reasonably necessary under the circumstances to complete the arrest." The instructions finally stated, "I have already ruled that [Chief Riggs] did have probable cause. However, you may consider the circumstances of the arrest as part of your assessment of the force necessary to effectuate the arrest."

The question presented at this procedural posture is whether there must be a new trial on the claim for excessive force. The issues of whether there was probable cause to arrest and whether

---

[5]Because we affirm the judgment on the jury verdict in favor of defendant Riggs, we need not reach Nails' argument that the district court abused its discretion by applying Federal Rule of Civil Procedure 59(e) to amend its previous grant to summary judgment and permit the trial on the excessive force claim.

excessive force was used are distinct. Nails cannot recover for both an unlawful arrest and excessive force if there was no probable cause. "A plaintiff may not recover on an independent excessive force claim merely because force was applied during an unlawful seizure." *See Cortez v. McCauley*, 438 F.3d 980, 995-97 (10th Cir. 2006). An incorrect instruction regarding whether Nails was properly arrested therefore has no effect on a jury's determination that there was not excessive force used in making the arrest.

**VIII.  Conclusion**

With respect to the claims against Riggs in his individual capacity we affirm the judgments of the district court on all federal claims and the dismissal of the state assault claim. We remand the state law claims for false arrest, false imprisonment, and malicious prosecution claim for further consideration in light of this opinion.

**ALAN E. NORRIS, Circuit Judge, concurring.** As the district court recognized in its opinion granting summary judgment, this lawsuit arose from an unfortunate series of events marked by a combination of "a marital dispute and a parental concern for children, perhaps inadequate communication among law enforcement, distraught and emotional participants, and perhaps, overreaction by the police." Memorandum Option at 2. While Chief Riggs' decision to arrest Mrs. Nails may have been ill-advised with the benefit of hindsight, not every questionable decision on the part of law enforcement arises to the level of a constitutional tort. In this case, I would affirm the conclusion of the district court that "[b]ased on the [] facts as they appeared at the time of arrest, a reasonable and prudent officer had sufficient evidence to establish probable cause to arrest Plaintiff for disorderly conduct," *Id.* at 6.

In all other respect, I concur in the opinion of the majority.